RICK *v.* SAGINAW BAY TOWING CO.

1. NEGLIGENT INJURY—INTERSTATE LAW—MASTER AND SERVANT.
   The liability of a master to his servant for a negligent personal injury is governed by the law of the place of the injury.

2. SAME—FELLOW-SERVANTS—CANADIAN STATUTE.
   A Canadian statute making an employer liable for an injury to a workman caused by the negligence of a servant who has any superintendence intrusted to him, or to whose directions the workman was bound to conform, is not contrary to the public policy of this State, and will be applied in a case where the injury occurred in Canadian territory.

3. SAME—DUTIES OF MATE OF VESSEL.
   The owner of a vessel cannot escape liability for an injury to a servant on the ground that the mate gave general directions, and the injury resulted from the misuse by a fellow-servant of the material provided, where there is evidence that it is the duty of the mate to attend to any work he orders done, and to see that it is done himself, and that he is hired for that purpose.

4. NEGLIGENCE—DEATH BY DROWNING—QUESTION FOR JURY.
   Where a plank staging let down over the side of a vessel was held by a rope in such a manner as to allow it to tip, whereby a seaman fell into the water and was drowned, when the customary manner of fastening the rope would not permit it to tip, the question of negligence should be submitted to the jury.

5. SAME—CONTRIBUTORY NEGLIGENCE.
   Where a seaman, whose death was occasioned by the tipping of a plank swung by ropes at the side of the vessel, could only have known how the ropes were fastened by a minute and careful examination, it was error to direct a verdict for the defendant on the ground that he was guilty of contributory negligence in descending to the staging to do the work he was ordered to do.

Error to Bay; Shepard, J.   Submitted October 15, 1902.
(Docket No. 55.)   Decided February 16, 1903.

Case by Elizabeth Rick, administratrix of the estate of Ferdinand Rick, deceased, against the Saginaw Bay Towing Company, for negligently causing the death of plaintiff's intestate. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*Crane & Crane* and *R. A. McKay*, for appellant.

*Simonson, Gillett & Clark*, for appellee.

MONTGOMERY, J. This action, which was based upon the Canadian statute hereinafter referred to, is brought to recover damages resulting from causing the death of plaintiff's intestate by negligence. The decedent was in the employ of the defendant as a wheelsman on board its tug Charleton. The declaration charges that one Brown was acting as mate of the Charleton at the time of the accident, and that Brown ordered the crew, consisting of the deck hands and decedent, who was wheelsman, to throw over the staging and scrape the outside of the tug. The staging or scaffold upon which this work was to be performed consisted of a plank 14 or 15 feet long, 12 to 16 inches wide, with cleats near either end, 5 feet long, nailed to the plank at right angles, so that on either side there was an extension of nearly 2 feet, and the staging, when suspended, would be by these cleats held away from the side of the tug. When the order to scrape down the side of the boat had been given, the testimony tends to show, the decedent went to get a pail or pails, and other members of the crew, including one Crow, swung the staging over. When decedent returned, they were putting the staging over. There was testimony tending to show that the customary way was to use two lines for this purpose. On the occasion in question but a single line was used, with a loop at either end, into which the end of the plank was inserted. The result was that, when swung, there was nothing to prevent the plank or platform from tipping, and there was testimony from which the inference could be drawn by the jury that it was because of the tipping of

the plank that the decedent was thrown into the water and drowned. At the close of the plaintiff's case the circuit judge directed a verdict for the defendant, apparently upon the two grounds: That the decedent was a fellow-servant of the one responsible for the swinging of the staging (and whether he deemed responsibility to rest upon the mate, Brown, or upon Crow, is not quite apparent from the record), and also upon the ground of contributory negligence. Upon this ruling the plaintiff assigns error.

A large number of interesting questions are presented in the brief of the learned counsel for the defendant. The question of first importance—the one which meets us at the threshold of the case—is whether the Canadian statute upon which the plaintiff relies is to be enforced in its entirety in this State. This statute dispenses with the immunity of the employer from liability for the negligence of a fellow-servant when personal injury is caused to a workman "by reason of the negligence of any person in the service of the employer who has any superintendence intrusted to him whilst in the exercise of such superintendence, or by reason of the negligence of any person in the service of the employer to whose orders or directions the workman at the time of the injury was bound to conform and did conform, where such injury resulted from his having so conformed." 1 Rev. Stat. Ont. 1897, chap. 160, § 3, subds. 2, 3. It is the contention of the defendant that, while the courts have frequently stated the rule that cases of personal injury are governed by the law of the place of the injury, this rule is subject to the qualification that the foreign statute, which, under the doctrine of comity, is to be enforced in this State, must not be against the public policy of the State, and that the phrase "public policy" has not the same meaning as in criminal jurisprudence, and that the public policy of the State of the forum depends merely upon whether the right conferred in the State where the injury took place is similar to the right conferred under like circumstances in the State where the

action is brought. Authorities may be found which, perhaps, will sustain this contention in its entirety; but the tendency of the modern decisions is to hold that, before the court of any State is justified in refusing to enforce a right of action accruing under the laws of any other State or country, it must appear that such right is against good morals or natural justice, or that for some other reason an enforcement of it would be prejudicial to the general interest of the citizens of the State of the forum, and that it does not follow that, because the statute differs from the law of the forum, it is contrary to the public policy of the State, within the meaning of this rule. See 22 Am. & Eng. Enc. Law (2d Ed.), 1379, 1380; Rorer, Interst. Law (2d. Ed.), p. 217 *et seq.; Dennick* v. *Railway Co.*, 103 U. S. 11; *Hanna* v. *Railway Co.*, 41 Ill. App. 116. For an able and learned opinion, reviewing the authorities, see *Herrick* v. *Railway Co.*, 31 Minn. 11 (16 N. W. 413, 47 Am. Rep. 771).

Defendant's counsel cite and rely upon the case of *Bettys* v. *Railway Co.*, 37 Wis. 323, which was decided in connection with *Anderson* v. *Railway Co.*, 37 Wis. 321. The court in *Herrick* v. *Railway Co.* refuse to follow the latter case, and point out, we think very clearly, that by the weight of modern authority the rule contended for by the plaintiff in this case is the prevailing rule. We hold, therefore, that the plaintiff's rights are to be determined by the law of Canada. See *Wingert* v. *Wayne Circuit Judge*, 101 Mich. 395 (59 N. W. 662); *Turner* v. *St. Clair Tunnel Co.*, 111 Mich. 578 (70 N. W. 146, 36 L. R. A. 134, 66 Am. St. Rep. 397). We do not overlook the contention of the defendant that this action is a penal action. We do not so regard it, and think the contention sufficiently answered by the reasoning of the court in *Huntington* v. *Attrill*, 146 U. S. 657 (13 Sup. Ct. 224).

Was there negligence on the part of the mate in directing the work of swinging this scaffold, and in permitting it to be done in the manner in which it was? Defendant contends that there was not; that he might give gen-

eral directions, and if there was material with which the work could be done at hand and on the boat, as the evidence tends to show was the case here, he would not be liable for the misuse by the fellow-servants of the deceased of the material which he had supplied. *Rawley* v. *Colliau*, 90 Mich. 31 (51 N. W. 350); *Erickson* v. *Mining Co.*, 130 Mich. 476 (90 N. W. 291). There would be force in this contention but for the fact that there is testimony by the witness Bridge, who was a sailor on the tug Howard, to which the Charleton was fastened at the time of the accident, and who had himself been a mate on schooners, and was familiar with the duties, to the effect that it is rulable for the mate to attend to any work which he orders done, and to see that it is done, and to oversee the work himself; that that is what a mate is hired for. We think this testimony sufficient to raise a question for the jury as to whether a neglect of duty on the part of the mate was a cause of the injury.

The testimony that the staging was not properly swung is, to our minds, very clear. If two lines had been employed, one at either end of the staging, as is customary, or if a single line had been employed, and had been drawn around the cleat at either end, it would have been impossible for the plank to tip up, and the injury would not have happened, so that there was negligence in swinging the plank in the manner in which it was swung is hardly open to dispute; at least, it opened a fair question for the jury.

But the defendant contends that the decedent assumed the risk, as, it is said, the manner in which this staging was swung was open to his observation. It is true that, by a minute inspection, he could have known that the rope was not fastened around the cleats; but it would have taken a somewhat careful investigation to show this, standing upon the deck as the staging was swung. In our opinion, it was not a case in which the court should have withdrawn from the jury the question of whether the decedent was negligent in descending to this staging to do the work which he had been ordered to do.

132 Mich.—16.

We think the views expressed furnish sufficient guidance for a retrial of the case, and direct that the judgment be reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred.