## WORKMEN'S COMPENSATION ACT WITHOUT EXTRA-TERRITORIAL EFFECT.

Superior Court of Cincinnati.

WILLIAM CODY v. GREENE PACKET COMPANY.

Decided, April 22, 1914.

*Negligence—Liability of Employer Under Action in Tort for Personal Injuries—Arising Outside of the State But in the Course of Employment—Where the Employer Has Paid Into the State Insurance Fund —Application of the Rule of Lex Loci Delicti.*

Section 21-1 of the workmen's compensation act of 1911 (102 O. L., 524), has no extra-territorial application; and the provisions thereof depriving an employer of five or more workmen, who has not insured, of the common law defenses can not be invoked by a workman seeking to recover of his employer damages for injuries sustained in the course of the employment in West Virginia, although the contract of employment was made in Ohio where both parties were resident.

*DeCamp & Sutphin* and *Gregor B. Moorman,* for the motion.
*A. L. Beaty* and *Millard Tyree,* contra.

MERRELL, J.

The defendant moves to strike from the petition the allegation that the defendant his employer, at the time of the accident, employed five or more workmen and had not subscribed to the state insurance fund. The petition alleges that the plaintiff, at the time of the accident, was a resident of Cincinnati, Ohio; that the defendant company is an Ohio corporation, and that plaintiff entered the defendant's employ in the city of Cincinnati. The cause of action is contained in charges that the defendant failed to warn the plaintiff of danger; failed to provide him a safe place in which to work, and failed to furnish him safe appliances and a safe method of operation, whereby the plaintiff, a deck hand on the defendant's steamboat, received injuries at a place near Charleston, in West Virginia.

By the allegation which it is sought to have stricken from the petition, the plaintiff seeks to bring his case within Section 21-1 of the workmen's compensation act of May 31, 1913:

"All employers who employ five or more workmen or operatives regularly in the same business or in or about the same establishment, who shall not pay into the state insurance fund the premiums provided by this act shall be liable to their employees for damages suffered by reason of personal injuries sustained in the course of employment, caused by the wrongful act, neglect or default of the employer or any of the employer's officers, agents or employees. * * * And in such action the defendant shall not avail himself or itself of the following common law defenses: *The defense of the fellow-servant rule, the defense of assumption of risk, or the defense of contributory negligence.*"

Manifestly the plaintiff has brought himself within the foregoing provision, if the same can be construed to apply to actions in tort which arise outside of the state of Ohio. The question is therefore presented whether this section of the act of 1911 has any extra-territorial effect.

The general rule is well settled that actions in tort for personal injury are transitory in their nature and are governed by the *lex loci deliciti.*

*Wharton on Conflict of Laws*, Section 478b:

"The reciprocal rights and duties of the parties and the defenses that may be invoked to escape liability for a breach of duty, are governed by the law of the place where the tort occurred, rather than by the law of the forum. This principle has been applied *inter alia* to reciprocal rights and duties of master and servant."

*Minor on Conflict of Laws,* Section 197:

"Not only does the *lex loci delicti* control the plaintiff's right to sue and the grounds of his complaint, but the same law usually governs the defenses which may be made by the defendant. It should be noticed that the courts are more chary of applying exceptions to the complete operation of a foreign *lex delicti* when it is the ground of the defendant's defense than when it is the

ground of the plaintiff's complaint. Few cases are found in which the defense of the alleged wrongdoer, based on the *lex delicti,* has been swept away by the courts in the maintenance of the supposed policy of the forum, though perhaps in extreme cases such a step might be justifiable." *Alabama Great Southern Ry. Co.* v. *Carroll,* 97 Ala., 126; *Turner* v. *St. Clair Tunnel Co.,* 111 Mich., 578; *Rick* v. *Saginaw Bay Towing Co.,* 132 Mich., 237; *Baltimore & Ohio S. W. R. R. Co.* v. *Jones,* 158 Ind., 87.

In the absence of apt language in the act such as would clearly indicate a legislative intent that the act should be given extra-territorial effect, it is well settled that the operation of the act will be confined to state limits. It was so held of the British workmen's compensation act. *Tomalin* v. *Pearson* (1909), 2 K. B., 61; *Hicks* v. *Maxton* (1907), 124 L. T., 135; and of the Massachusetts compensation act, *Gould's case,* 215 Mass., 480.

If Section 21-1 of the act of 1911, standing alone, were under consideration, the accepted doctrines above stated would dispose of the present issue. It is, however, contended that taking the entire act in all its provisions as one, the legislative intent is declared to extend its operation beyond the state limits to all cases where the relation of master and servant arose or was created within the state. Thus in Section 20-1 of the act it is provided:

"Any employer who employs five or more workmen or operatives regularly in the same business, or in or about the same establishment who shall pay into the state insurance fund the premiums provided by this act, shall not be liable to respond in damages at common law or by statute, save as hereinafter provided, for injuries or death of any such employee, *wherever occurring,* during the period covered by such premiums, provided the injured employee has remained in his service with notice that his employer has paid into the state insurance fund the premiums provided by this act; the continuation in the service of such employer with such notice, shall be deemed a waiver by the employee of his right of action as aforesaid."

Assuming for the moment, that the phrase "wherever occurring" found in Section 20-1 may by implication be read into the

provisions of Section 21-1, the question of the extra-territorial effect of the act as to its punitive provisions is squarely presented. In such case, that is to say, assuming that the phrase "wherever occurring" can by implication be read into Section 21-1 of the act of 1911, the application of this statute to torts occurring beyond the limits of the state, can be predicated only upon a contract made in Ohio between the employer and the employee, wherein both consent, either expressly or by implication that the Ohio compensation act shall be incorporated in their contract.

If, in the present case, the contract of employment had been made in West Virginia where the plaintiff's injury occurred, the case would fall within the rule stated in *Alexander* v. *Pennsylvania R. R. Co.*, 48 O. S., 623, the second syllabus of which is as follows:

"Where in an action prosecuted in this state by a servant against his master to recover for personal injury resulting to him from the negligent act of another servant of the same master, it appears that the accident causing the injury occurred in the state of Pennsylvania, that the contract of employment was made in that state, and that all the stipulated services were to be performed therein, no recovery can be had if by the laws of Pennsylvania, no right of action arose from the transaction; though the laws of Ohio would give full relief had the transaction occurred within this state."

In the present case it is claimed that the fact that the contract of employment was entered into in Ohio requires a different conclusion; and that, because of this fact, the parties will be deemed to have contracted that the law of Ohio should control in a determination of the rights of one of them against the other in an action in tort arising outside the state but in the course of the employment.

This doctrine has been vigorously criticised and repudiated in certain jurisdictions, as for example, in *Alabama Great Southern Ry. Co.*, 97 Ala., 126, and *Kansas City, etc., R. R. Co.* v. *Becker*, 67 Ark., 1.

In the view of the authorities last mentioned a simple contract of employment entered into between master and servant contemplates only the exchange of services for wages, and does not, in the absence of express stipulation, comprehend the adoption of the law of the place where the contract was made as applicable necessarily to the solution of actions in tort between the parties; that in such causes of action the relation of master and servant is to be regarded as one of status rather than of contract.

The present case, however, does not necessitate the adoption of either theory suggested, for it is clear that before applying the theory of a contract between master and servant to the solution of an action between them sounding in tort, there must exist a genuine contract in the first place, whereby the parties either expressly or by implication agree that the law of the place of contract shall apply to actions in tort arising out of the contractual relation. This is recognized by the Legislature in Section 20-1 of the compensation act of 1911 (and likewise in the act of 1913) wherein the exemption from suit of the employer who has insured is made dependent upon his contract with his employee, by the following words:

"Provided the injured employee has remained in his service with notice that his employer has paid into the state insurance fund the premiums provided by this act; the continuation in the service of such employer with such notice shall be deemed a waiver by the employe of his right of action as aforesaid."

No such contract, express or implied, can be inferred in the case of an employee who entered into or continued in the employ of a corporation which had not insured, under the act of 1911.

Such an employer, as for example, the defendant in the present case, was not required to, and presumably did not notify, his workmen of his failure to insure, and inasmuch as such employer, under the act of 1911, had his option whether to insure or not, it can not be said that a contract was fastened upon the parties by implication of law. To say of the plaintiff in this case that when he entered the employ of the defendant in July, 1913, he con-

tracted to receive compensation for possible injuries, out of the state insurance fund, *or* to have a cause of action against his employer, unhampered by the common law defenses is metaphysical and indulging in fiction.

Assuming, therefore, that Section 21-1 of the act of 1911 is to be read as though it contained the phrase ''wherever occurring'' impliedly transferred from Section 20-1, I conclude that in the present case there was no contract between the parties, in the sense referred to, and that their rights in a possible action between them arising *ex delicto* should be solved by the law of the place where the tort occurred, rather than by the law of Ohio.

Moreover, the assumption hitherto made that the provisions of Section 21-1, depriving the employer who had not insured of the common law defenses, contained by implication the phrase ''wherever occurring'' transposed from Section 20-1, is an unnecessary and violent one. In truth, the provision depriving the employer who has not insured, of the three common law defenses is coercive in its obvious intent. It is somewhat in the nature of a penalty. The Legislature may very well have intended to bring about a state-administered system of workmen's compensation by its voluntary adoption on the part of employers and enuring to workmen wherever employed, without giving to the penalties which are attached for non-insurance any extra-territorial application.

It is therefore rational to suppose that the protection granted employers who insured was given a scope which it was not seen fit to attach to provisions in the nature of a penalty. For this reason, the language of Section 21-1 of the act of 1911 should be read without unnecessary implication or construction, and being so read, this provision can not be said to have or to be intended to have any extra-territorial application.

The motion to strike is also urged upon the ground that the allegation referred to amounts to an anticipation of possible defenses and is therefore improper in the petition. This court has repeatedly held that where the parties are within the application of the statute the allegation in question has its proper place

in the petition, as the legal equivalent of averments otherwise necessary negativing the possible inferences of assumption of risk or contributory negligence which might render the petition demurrable; it is also proper to preclude a submission to the jury of the question whether the plaintiff's testimony gives rise to the presumption of contributory negligence.   (*Geiger* v. *Moerlein Brewing Co., Court Index*, April 20, 1914.)

For the reasons first stated the motion is granted.