MEYER v. WEIMASTER.

1. CONFLICT OF LAWS—RIGHT OF ACTION—REMEDY.

All matters relating to the right of action are governed by the laws of the State where the accident happened and all matters relating purely to the remedy by the law of the forum.

2. AUTOMOBILES—INDIANA—CONTRIBUTORY NEGLIGENCE—STOPPED VEHICLES—LIGHTS.

Motorist, traveling 35 miles an hour at night, who was using dimmed lights because of oncoming traffic and swerved to left without applying brakes before colliding with rear end of tractor and semi-trailer which had stopped on pavement near, but not in, an intersection in Indiana, because of mechanical trouble, *held*, not guilty of contributory negligence as a matter of law under statutes of that State where testimony as to presence of lights on truck was in dispute (8 Burns' Indiana Stat. 1933, §§ 47–504, 47–505, 47–516, 47–526).

3. HIGHWAYS AND STREETS—INTERSECTIONS—STOP SIGNS—OBSTRUCTIONS.

Stop signs along a highway, warning approaching motorists of the proximity of an intersection, cannot be held to warn them of an obstruction on the highway that is not at the intersection.

4. AUTOMOBILES—NEGLIGENCE—PROXIMATE CAUSE.

Negligence, if any, of motorist, traveling easterly 35 miles an hour at night, in failing to observe warning signs near an intersection of highways in Indiana *held*, not the proximate cause of striking defendant's truck, parked on pavement 110 feet from such intersection in south lane of four-lane highway (8 Burns' Indiana Stat. 1933, §§ 47–505, 47–516, 47–526).

5. SAME—INDIANA—SPEED—PARKED TRUCK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In motorist's action against truck owner arising out of rear-end collision with truck parked on pavement in nighttime in Indiana, questions of whether plaintiff's action in attempting to avoid a collision when he observed defendant's truck 60 feet away and whether his speed was reasonable and prudent under the circumstances as required by statute *held*, for jury (8 Burns' Indiana Stat. 1933, §§ 47–505, 47–516, 47–526).

6. SAME—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

In action arising from accident in Indiana whereby motorist, traveling at 35 miles an hour in nighttime, collided with rear end of defendant's truck after first observing it about 60 feet away, instruction to jury that if plaintiff saw, or should have seen, truck in time to have avoided collision plaintiff was guilty of negligence, which, if it contributed to cause the accident, rendered him guilty of contributory negligence *held*, proper.

7. SAME—NIGHTTIME REAR-END COLLISION—TAILGATE.

In motorist's action against trucker, arising out of nighttime rear-end collision in Indiana, question as to position of tailgate at end of semi-trailer, claimed to have extended four feet beyond body of the truck and whether it was negligence in leaving it in such position while truck was parked on highway *held*, questions of fact properly left to jury under suitable charge.

8. SAME—NEGLIGENCE—TRUCKS—TAILGATE—LIGHTS.

Under evidence, presented in case arising from nighttime rear-end collision in Indiana with defendant's semi-trailer, that tailgate was down and no claim made that lights were ever placed on protruding end of such tailgate nor anything to indicate an obstruction three or four feet beyond body of truck, negligence of trucker *held*, a question of fact for jury.

9. DAMAGES—EXCESSIVE VERDICT—PERSONAL INJURIES.

Verdict of $4,000 to motorist, injured when his car collided with rear end of defendant's semi-trailer, *held*, not excessive where injured man received cuts about the face and head, bruises and comminuted fracture of left humerus with slivers of bones, at time of trial he was still suffering pain, medical testimony indicated permanent partial disability and hospitalization for period of over five weeks and medical bills amounted to about $400.

10. SAME—PERSONAL INJURIES—APPEAL AND ERROR.

Allowance for personal injuries rests with the trier of facts and verdict therefor which has not been secured by improper methods, prejudice or sympathy and is not so great as to shock the judicial conscience will not be disturbed.

11. AUTOMOBILES—PARKED TRUCKS—NIGHTTIME—EVIDENCE.

Verdict for motorist whose car collided with rear end of defendant's semi-trailer which had been parked at night near intersection of highways in Indiana on south lane of four-lane highway, headed easterly *held*, supported by evidence.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted October 6, 1936. (Docket No. 19, Calendar No. 39,093.) Decided December 28, 1936.

Case by John H. Meyer against Earl H. Weimaster, doing business as Weimaster Truck Company, for personal injuries sustained in rear-end collision. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Leo W. Hoffman,* for plaintiff.

*Mason, Sharpe & Stratton,* for defendant.

BUSHNELL, J. Plaintiff, a resident of Van Buren county, brought this action against defendant, a resident of Kalamazoo county, for damages resulting from an automobile accident which occurred on US–12 in the State of Indiana, about three or four miles east of Michigan City.

Plaintiff was returning to his home from a hunting trip in the northern peninsula of Michigan, by way of Chicago, and was driving a Ford pickup truck in an easterly direction. Defendant's tractor and semi-trailer, hereinafter designated as a truck, had been proceeding in the same direction on US–12 until it developed wheel bearing trouble and came to a stop west of the intersection of US–12 and Indiana State Highway 212. US–12 is a four-lane paved highway running east and west; Indiana 212 is a paved highway that joins US–12 from the southwest. Signs are erected near the junction indicating that traffic on US–12 should stop before entering the intersection.

Defendant's truck, measuring about 28 feet in length and loaded with baled scrap paper, had been

parked on the righthand, south lane of the paved portion of US–12, because a wheel bearing had burned out and it was considered dangerous to proceed further. The driver of the truck and defendant's mechanic, who had been following in a smaller truck, determined that it was necessary to stop upon the pavement because the unpaved portion of the side of the road would not support the weight of the truck.

After placing a burning kerosene flare at the side of, ahead of and behind the truck, they switched on the electric signals of the truck itself. The truck signals consisted of headlights, a light at each back corner and three green and one red light between the corner ones. After satisfying themselves that the truck was properly protected as to burning signal lights, the driver and the mechanic went back to Michigan City to secure replacements. They testified that when they returned, they found all the flares extinguished; one was tipped over and smashed and one could not be found. The electric lights on the truck were also out, because, as they stated, the rear end of the truck had been smashed and the main wire leading to the rear lights had been torn loose.

Shortly after defendant's employees had left the parked truck, plaintiff Meyer, traveling at an estimated speed of 35 miles an hour on US–12, approached this intersection. He testified that he had just passed a line of six or seven cars headed in the opposite direction and had dimmed his own lights to prevent blinding the drivers of these oncoming vehicles. He said that he saw defendant's truck for the first time when he was about 60 feet away, but that there were no lights on or about the vehicle. He stated that he believed at first that the truck was

moving in the same direction as his car, but when he determined that he was mistaken, and that it was standing still, he took his foot off the accelerator and, without applying the brakes, swung as far to the left as possible. He did not clear the parked truck, but, as he states it, struck something at the rear of it and was rendered unconscious as a result of the crash.

His passenger, Harry Funk, stated that he did not see the truck until plaintiff started to swing to the left to go around it, and that no lights or flares were burning. Neither Meyer nor Funk observed any stop signs although they claimed to be looking for them.

Several disinterested witnesses testified that immediately before and just after the accident, they had seen the unattended truck parked on the highway without lights. There is some conflict in the testimony regarding the position of the truck with respect to the intersection, and estimates varied between 33 and 110 feet. All witnesses agreed, however, that the truck was not parked within the intersection itself. The testimony is also in conflict as to the presence and positions of warning or stop signals in the immediate vicinity. Several of plaintiff's witnesses say that a flashing, electric stop sign was installed near the intersection following the accident; others say that they did not know when it was installed or whether it was there at that time. The evidence indicates that the plaintiff's car struck the left end of the tailgate on the defendant's truck, which tailgate was extending out about four feet; it was supported by chains at each side, was raised up somewhat from a horizontal position, and held a bale of paper.

Three questions are raised on appeal: Was plaintiff guilty of contributory negligence as a matter of law and should the court have directed a verdict in

favor of defendant? Did the court err in permitting the jury to speculate upon defendant's negligence because of the lowered tailgate? Was a verdict and judgment of $4,000 excessive under the circumstances?

The accident happened in Indiana and the action was brought in Michigan; therefore all matters relating to the right of action are governed by the laws of Indiana and all matters relating purely to the remedy, by the laws of Michigan. *Petrusha* v. *Korinek*, 237 Mich. 583; *Eskovitz* v. *Berger*, 276 Mich. 536.

Was plaintiff guilty of contributory negligence as a matter of law, under the Indiana law? We quote from the Acts of the Indiana General Assembly, as follows:

"It shall be unlawful for any person to park a motor vehicle or motor-bicycle or to leave any such motor vehicle or motor-bicycle without an attendant, on the traveled portion of any highway outside the corporate limits of any city or town, except in case of an emergency." Laws of Indiana 1933, chap. 90, pp. 653, 658 (8 Burns' Indiana Stat. 1933, § 47–526).

"It shall be unlawful for any person to park or leave a motor vehicle upon any portion of any highway outside of any city or town between the hours of one-half hour after sunset to one-half hour before sunrise, unless such motor vehicle so parked or left shall display upon the front two lighted white lights, properly dimmed, and one lighted red light on the rear of such motor vehicle." Laws of Indiana 1929, chap. 190, pp. 616, 621 (8 Burns' Indiana Stat. 1933, § 47–505).

"While any motor vehicle used for the carriage of passengers for hire, or any motor truck or commer-

cial motor vehicle is stopped on the traveled portion of any highway outside the corporate limits of any city or town, for a purpose other than taking on or discharging passengers or freight, or complying with traffic requirements, the operator thereof shall cause to be displayed in a prominent position above the surface of the highway at a distance of approximately three hundred feet from such vehicle, in the direction from which it was coming and also in the direction in which it was proceeding, a brilliant-burning danger or caution signal.'' Laws of Indiana, 1933, chap. 90, pp. 653, 658 (8 Burns' Indiana Stat. 1933, § 47–526).

The law of Indiana provides under 8 Burns' Indiana Stat. 1933, § 47–516:

''No person shall drive or operate a motor vehicle or motor-bicycle upon any public highway in this State at a speed greater or less than is reasonable or prudent, having regard to the width of the highway, the density of the traffic, the condition of the weather and the use of the highway, or so as to endanger the life or limb or injure the property of any person.''

Appellant cites among others *Cleveland, C., C. & St. L. R. Co.* v. *Gillespie,* 96 Ind. App. 535 (173 N. E. 708), and *Pennsylvania R. Co.* v. *Huss,* 96 Ind. App. 71 (180 N. E. 919), which he says state the proper rule rather than the later case of *Opple* v. *Ray,* 208 Ind. 450 (195 N. E. 81).

We believe *Opple* v. *Ray, supra,* decided April 9, 1935, is controlling. In that case, defendant's car was parked at night upon a public highway, unattended and without lights. Plaintiff was approaching from the rear and had dimmed his lights to avoid blinding an oncoming driver; he did not see defend-

ant's car until he was about 12 or 15 feet away and could not stop quickly enough to avoid a collision. It was urged that plaintiff was guilty of contributory negligence, because of a violation of the Indiana statute which requires that headlights must be visible 400 or 500 feet and must enable a driver to see an object the size of a man 200 feet in front of his car in the direction in which it is proceeding. We quote from the opinion (p. 457):

"The statute in question, section 47–504, Burns' Indiana Stat. 1933, also provides that the operator of a car shall, when approaching and about to pass a car traveling in the opposite direction, dim or reduce the front lights on his car so that the rays projected therefrom will not blind or confuse the other driver. Under statutes similar to this, it has been held in most jurisdictions that a car must be equipped with such lights and must proceed at such speed that the operator will be able to stop before colliding with any object in his path; and this court denied petitions to transfer in two cases, which seems to indicate an adherence to such a rule. Both cases, *Pennsylvania R. Co.* v. *Huss* (1933), 96 Ind. App. 71 (180 N. E. 919), and *Cleveland, C., C. & St. L. R. Co.* v. *Gillespie* (1933), 96 Ind. App. 535 (173 N. E. 708), involved the collision of an automobile with a freight train standing upon a railroad crossing in the dark. In both cases it was held that to drive an automobile at such a speed that it could not be stopped within the distance that objects could be seen ahead of it was contributory negligence as a matter of law, and that the question of proximate cause is not properly submitted to the jury. Many cases from many jurisdictions are cited to support the proposition, but it seems to us that the statement is too broad. Statutory provision is made for the maintenance of signs at the side of the highway indicating the approach to

a railroad crossing. The signs are maintained for the protection of those using the highway. Reasonable prudence requires that one using the highway take care to observe such signs, and take notice of the proximity of a railroad track, which is of itself notice of danger. No negligence on the part of the railroad company was shown in either of the cases, and there was no basis for recovery in any event.

"The statute does not establish a fixed standard of distance for which lights must provide visibility. The requirement that lights be dimmed or deflected negatives the intention to fix such a requirement. Such a provision would be impossible of compliance. * * * From the standpoint of reasonable care, speed has a direct relationship to visibility. The statute merely provides a mechanical standard for lighting equipment, and was not intended to fix a standard of care. This standard is fixed by section 47–516, Burns' Indiana Stat. 1933, which is as follows: 'No person shall drive or operate a motor vehicle or motor-bicycle upon any public highway in this State at a speed greater or less than is reasonable or prudent, having regard to the width of the highway, the density of the traffic, the condition of the weather and the use of the highway, or so as to endanger the life or limb or injure the property of any person.' This is the measure of care required of the driver of a motor vehicle upon the highway. One who travels the public highway in the daylight is not charged with the duty of seeing every dangerous obstruction, and stopping before coming in contact with it, upon penalty of being chargeable with contributory negligence. A traveler upon a highway regularly used by the public has a right to assume that the way is reasonably safe for ordinary travel. *City of Indianapolis* v. *Gaston* (1877), 58 Ind. 224; *Town of Elkhart* v. *Ritter* (1879), 66 Ind. 136; *Noblesville Gas & Improvement Co.* v. *Loehr* (1890), 124 Ind. 79 (24 N. E. 579)."

We continue our quotations from that opinion (p. 459):

"The conclusion is unavoidable that the hard and fast rule, that one who operates a motor car at night must equip his car with such lights, and proceed at such speed, and observe the way with such care, that he will see any dangerous obstruction in the highway, and that he must stop before collision and injury to himself under penalty of being chargeable with negligence contributory to his own injury, is basically and fundamentally unsound, and the question of negligence must be determined from the facts and circumstances in each case. A driver is bound to observe the red tail-light of a car in front of him, proceeding in the same direction, and, still, he is not necessarily chargeable with negligence should he collide with such a car if it should stop suddenly and unexpectedly, and without signalling."

The opinion cites 8 Burns' Indiana Stat. 1933, § 47–505, and continues (p. 460):

"One who is driving on the highway in a reasonably prudent manner has the right to presume that there is no car upon the traveled way in the dark, unlighted; and if he collides with such a car, without notice of its presence, or of facts which would put a reasonably prudent person upon notice of danger, he cannot be charged with negligence contributing toward the collision."

Further the court said (p. 461):

"It must therefore logically follow that one who drives at night at a speed which will permit him to observe ordinary signals of danger and obstruction, which would ordinarily and naturally be seen by a reasonably prudent person in time to stop without injury, cannot rationally be charged with negligence

contributing to a collision because he failed to see and avoid a collision with an object which a reasonably prudent person would not anticipate or expect to find in his path. And an automobile parked in the highway without lights must be considered such an object.''

The only difference in fact between the *Opple Case* and the instant one is shown by the claim of appellant that intersection signs were visible on US–12. Stop signs along a highway, warning approaching motorists of the proximity of an intersection cannot be held to warn them of an obstruction on the highway that is not at the intersection. Appellant argues that plaintiff was negligent in failing to observe these stop signs and for that reason the case at bar is governed by the holding in *Gillespie* and *Huss Cases*. However, in the instant case, these stop signs gave warning of the intersection and not of the obstruction, and the reasoning of the *Gillespie* and *Huss Cases* is not applicable. The driver of defendant's truck admitted on cross-examination that he had parked his vehicle 110 feet west of the intersection. If plaintiff was guilty of negligence in failing to observe the warning signs, that negligence is not the proximate cause of striking a parked truck 110 feet from the intersection.

Appellant further contends that plaintiff was guilty of contributory negligence because he saw the truck a sufficient distance ahead to enable him to avoid a collision and that the impact was due to plaintiff's poor judgment. Whether plaintiff's action in attempting to avoid a collision when he observed defendant's truck 60 feet away, and whether his speed was reasonable and prudent under the circumstances as required by 8 Burns' Indiana Stat. 1933, § 47–516,

were questions for the jury. The court charged the jury at length on this matter and said:

"If you find that the plaintiff saw the defendant's truck in time so that in the exercise of ordinary care he could have avoided the collision, or that in the exercise of ordinary care he should have seen it in time to avoid the collision, then in such case the plaintiff was guilty of negligence. If such negligence contributed to cause the accident, then, of course, he is guilty of contributory negligence."

Appellant cites as error the court's charge upon the question of defendant's negligence in permitting the lowered tailgate to extend beyond the body of the truck. The trial judge in his charge, said:

"There is some evidence concerning the position of the tailgate on the rear of the defendant's truck. It is for you to say whether or not under all the particular facts, circumstances and conditions shown by the evidence it was negligent, careless, for the defendant to have the tailgate in the particular position you find it to have been."

We find no error in this portion of the charge. This was also a question of fact and was fairly presented to the jury.

Appellant's allegation of this as error infers that, as a matter of law, defendant could not be guilty of negligence in permitting the tailgate to be down. It is not claimed that there was any light on the end of the extended tailgate or anything to indicate that there was an obstruction three or four feet beyond the body of the truck itself. The Indiana court held in *Koplovitz* v. *Jensen,* 197 Ind. 475 (151 N. E. 390), that an analogous situation (projecting truck platform) raised a question of fact for the jury.

Appellant says that the verdict of $4,000 is excessive. The only medical witness at the trial testified that his examination of plaintiff, upon the day of the accident, disclosed cuts about the face and head, bruises, a comminuted fracture of the left humerus with slivers of bones and a semi-conscious condition. Plaintiff was in the hospital from November 24th to December 31st and X-rays taken from time to time disclosed that six months after the accident the fracture was not completely reduced because of the difficulty in keeping it in apposition. Plaintiff was still suffering pain and unable to make full use of his arm. The medical testimony indicated a permanent partial disability. The hospital and medical bills amounted to about $400.

Our holding in *Watrous* v. *Conor*, 266 Mich. 397, is applicable. We said:

"Assuming even that our verdict might be in a different amount, we are loath to disturb verdicts for personal injuries on the ground that the amount is excessive. *Cawood* v. *Earl Paige & Co.*, 239 Mich. 485. We do not substitute our judgment on this question unless a verdict has been secured by improper methods, prejudice or sympathy. *Michaels* v. *Smith*, 240 Mich. 671. No such showing has been made, nor were the verdicts so great as to shock the judicial conscience. *Sebring* v. *Mawby*, 251 Mich. 628."

Under the law of Indiana, the questions as stated were ones of fact; the jury was properly charged as to the *lex loci;* its finding is supported by the evidence, and the verdict is not excessive.

The judgment is affirmed, with costs to appellee.

NORTH, C. J., and FEAD, WIEST, BUTZEL, SHARPE and TOY, JJ., concurred. POTTER, J., did not sit.