SWEENEY v SWEENEY

Docket No. 59035. Argued January 3, 1978 (Calendar No. 3).—Decided February 27, 1978.

Michele Sweeney, a minor, by her next friend, Alex Eresten, brought an action against her father, Jimmie A. Sweeney, for damages arising out of an automobile accident. The parties lived in Michigan and the defendant's car was registered and insured in Michigan, but the plaintiff was injured when the defendant's car, in which she was a passenger, skidded off a road in Ohio. The Washtenaw Circuit Court, Ross W. Campbell, J., granted accelerated judgment for the defendant on the ground that the doctrine of intra-family immunity from suit, which has been overruled in Michigan but is the rule in Ohio, is a matter of substance governed by the law of the place of injury. The Court of Appeals, Bronson, P. J., and Beasley and D. Anderson, Jr., JJ., affirmed (Docket No. 26772). Plaintiff appeals. *Held:*

Michigan's announced public policy is to permit a child to maintain a lawsuit against his parent for injuries suffered as a result of the ordinary negligence of the parent. That public policy should apply to Michigan residents suing in Michigan courts even though the negligence occurred in Ohio. Automatic application of the rule of conflicts of laws that a right of action for tort is determined by the law of the state where the injury occurs *(lex loci delicti)* in the instant case would frustrate an announced public policy of Michigan. This decision applies to future intra-family tort actions, those currently in the trial courts, and to those on appeal if the issues are properly preserved. The Court does not decide whether the rule *lex loci delicti* should be applied in other situations.

Reversed and remanded to the trial court for further proceedings.

71 Mich App 428; 248 NW2d 571 (1976) reversed.

---

REFERENCES FOR POINTS IN HEADNOTE

59 Am Jur 2d, Parent and Child § 149.

Conflict of laws as to right of action between husband and wife or parent and child. 96 ALR2d 973.

Liability of parent for injury to unemancipated child caused by parent's negligence. 41 ALR3d 904.

TORTS—PARENT AND CHILD—PARENTAL IMMUNITY—CONFLICT OF LAWS
  —*Lex Loci Delicti.*

  Michigan's announced public policy is to permit a child to main-
    tain a lawsuit against his parent for injuries suffered as a
    result of the ordinary negligence of the parent; that public
    policy applies to a Michigan resident suing in a Michigan court
    even though the negligence occurred in a state which has not
    adopted it, and automatic application of *lex loci delicti* frus-
    trates the public policy.

*Lawrence W. Sperling* and *Sommers, Schwartz,
Silver, Schwartz & Tyler, P. C.* (by *Melissa N. Lee*
and *Edward R. Stein),* for plaintiff.

*Douvan & Harrington* (by *Gordon J. Barnett,
Jr.)* for defendant.

COLEMAN, J. Michele Sweeney was injured when
a car driven by her father, Jimmie Sweeney, skid-
ded off a road in Ohio. The Sweeneys lived in
Michigan; the car was registered and insured in
Michigan; Mr. Sweeney had a Michigan driver's
license.

Michele Sweeney sued her father in Michigan
where the doctrine of intra-family immunity had
been overruled in "the interests of justice and
fairness to all concerned". *Plumley v Klein,* 388
Mich 1; 199 NW2d 169 (1972). Ohio continues to
apply the immunity doctrine.

The trial court granted Jimmie Sweeney an
accelerated judgment. The court said immunity is
a matter of substance and "conflict of law issues
invoking * * * matters of substance are governed
by the law of the place of injury *(lex loci delicti)".*
The court rejected plaintiff's proposal "to recognize
an exception to *lex loci delicti* in this case of intra-
family litigation". The Court of Appeals affirmed.
71 Mich App 428; 248 NW2d 571 (1976).

Although we reverse the Court of Appeals, we

are not critical of the decision because it is based upon venerable Michigan precedent. However, we take this opportunity to review the reasoning adhering to *lex loci delicti* in light of interim developments in Michigan law and public policy.

Sometimes precedent remains unchanged over the years because it has periodically received wise review and has been found still sound despite the changes brought by time. On other occasions courts adhere to precedent simply because it exists long after need or policy considerations have changed or disappeared.

I

Ten years ago, our Court had another opportunity to review the *lex loci delicti* doctrine. In *Abendschein v Farrell,* 11 Mich App 662; 162 NW2d 165 (1968), the Court of Appeals urged "a fresh look at the dictates of *lex loci delicti*". Although finding the doctrine outdated, the Court concluded that if it "is to be overruled * * * that is the function of the Supreme Court".

Our Court did not accept the challenge. 382 Mich 510; 170 NW2d 137 (1969). While acknowledging the modern choice of law theories, the Court clung to *lex loci delicti.* It said "the quagmire of unanswered and perceivably unanswerable questions arising out of the proposed new doctrine appears less attractive than our admittedly hard and fast—and occasionally ·unjust, it is true— rule".

The Michigan rule is "hard and fast" and ancient. In *Wingert v Wayne Circuit Judge,* 101 Mich 395; 59 NW 662 (1894), a Michigan resident drowned in Canada. The estate administrator sued in Michigan. The circuit judge refused to allow an

amendment of the complaint based on Canadian law because the Canadian statute of limitations had run. The Supreme Court affirmed saying if "plaintiff has any right of action, it is by virtue of those laws. * * * The Canadian statute establishes the liability and provides the remedy".

Another Canadian accident was involved in *Turner v St Clair Tunnel Co,* 111 Mich 578; 70 NW 146 (1897). Plaintiff was a laborer working on the American side of a tunnel between Ft. Gratiot, Michigan and Port Sarnia, Ontario. He was sent to the Canadian side for one day and was injured. He sued the company in Michigan.

The trial court based the company's responsibility on Michigan law. The Supreme Court reversed saying "the action for the wrong is transitory, but * * * the right of recovery depends upon the law of the place where the tort is committed". Citing *Wingert,* the Court said "the law of the place of the injury as to the duty of the master must apply".

Similar statements have been frequently (and almost reflexively) made.[1]

In 1939 the Court decided *Kaiser v North,* 292 Mich 49; 289 NW 325 (1939), a decision dissected by the Court of Appeals in *Abendschein.* Plaintiffs were passengers in a car driven by defendant. An

[1] See *Petrusha v Korinek,* 237 Mich 583; 213 NW 188 (1927) ("the general rule is that substantive matters relating to the right of action are governed by the *lex loci delicti*"); *Perkins v Great Central Transport Corp,* 262 Mich 616; 247 NW 759 (1933) ("'[w]here an action is brought in one jurisdiction for a tort committed in another, the general rule is that all matters relating to the right of action are governed by the *lex loci delicti*' "); and *Hazard v Great Central Transport Corp,* 270 Mich 60; 258 NW 210 (1935) ("It is well settled that liability for a tort is determined by the law of the place of injury."). Also see *Stahl v Bell,* 276 Mich 37; 267 NW 779 (1936); *Meyer v Weimaster,* 278 Mich 370; 270 NW 715 (1936); *Summar v Besser Manufacturing Co,* 310 Mich 347; 17 NW2d 209 (1945); *Bostrom v Jennings,* 326 Mich 146; 40 NW2d 97 (1949); and *Leebove v Rovin,* 363 Mich 569; 111 NW2d 104 (1961).

accident occurred in Ontario. Plaintiffs sued in Michigan. Ontario law barred guest passengers from bringing any action; Michigan law allowed them to recover if defendant were grossly negligent. Plaintiffs said applying the Ontario statute would offend the Michigan Constitution and Michigan public policy.

The Supreme Court said Ontario law "is not tested by either the constitutional or statutory law of this jurisdiction; provided the foreign law does not conflict with our public policy". A public policy question would arise if Ontario law "provided for plaintiffs a right of action which did not exist in" Michigan. However, "these plaintiffs are asserting a right of action which does not exist under the laws of Ontario, the *lex loci delicti*". The difference between Michigan and Ontario law "is not a reason for holding the statute of the foreign jurisdiction contravenes public policy here".

In *Abendschein,* the Court of Appeals said *Kaiser* "is not based on any authority which remains viable today". Judge GILLIS wrote "the policy facts on which *[Kaiser]* rested have changed radically in the intervening years—so much so that one might question whether we are even deciding the same problems raised by the *Kaiser* situation".

After extensive analysis, the Court of Appeals labeled *Kaiser* an empty shell. The Court said "the *lex loci delicti* formulation is no longer of general application" noting that "nearly every jurisdiction which has recently considered the choice-of-laws issue in multistate torts has departed from the *lex loci delicti* formulation".[2]

---

[2] Also, "[n]owhere in *Kaiser* is inquiry made as to why the law of the place of the wrong should invariably govern the standard of care owed by parties to a relationship based primarily in a state other than that in which the injury occurred. We conclude that a necessary ingredient of the *Kaiser* decision was that the application of *lex loci*

Our Court did not accept the plea of the Court of Appeals "to write on a clean slate". The *Sweeney* case ten years later provides an opportunity to reappraise our entire conflict of laws policy.

## II

There are, however, recognized perils in an over-broad approach. Professor Juenger noted in his *Torts Choice of Law in Michigan,* 52 MSBJ 730 (1973), that while "novel approaches may support a sensible result in one instance, they have the awkward propensity to compel an unfortunate outcome in the next case that comes along". We can reach a proper result in this case without revamping Michigan's entire law of conflicts.

*Kaiser* said foreign laws are not tested by our constitution or statutes "provided the foreign law does not conflict with our public policy". This echoed language from earlier cases.

In *Rick v Saginaw Bay Towing Co,* 132 Mich 237; 93 NW 632 (1903), a Michigan resident drowned in Canada. Under Canadian law his administratrix had a cause of action; under Michigan law, she did not. The circuit court directed a verdict for defendant.

On appeal, defendant said that enforcing the Canadian law under the *lex loci delicti* doctrine would contravene Michigan public policy. The Court said it would not refuse to enforce the cause of action unless it appears "such right is against

*delicti* as to any and all issues relating to the right was the universally accepted rule in this country. What should the result be on a re-examination of *Kaiser* when the very essential fact of universality and predictability are no longer existent? It appears to our minds that *Kaiser* governs a fact situation which no longer exists. Under the facts of the present case, including the jurisdictional facts which are necessarily part of any conflicts or choice-of-laws rule, our Supreme Court should write on a clean slate."

good morals or natural justice, or that for some other reason an enforcement of it would be prejudicial to the general interest of" Michigan residents. Although the Canadian law was different, "it does not follow that * * * it is contrary to the public policy of the state".

In *Rick,* foreign law allowed a suit which Michigan law barred. A similar situation appeared in *Eskovitz v Berger,* 276 Mich 536; 268 NW 883 (1936), concerning an automobile accident in Ohio in which Michigan residents were injured. Ohio permitted passengers to sue for ordinary negligence; Michigan required a showing of gross negligence.

Plaintiffs won in a Michigan court and defendant appealed. Our Court noted that although *lex loci delicti* was the general rule, "there is the well-established exception that the foreign law will not be recognized if contrary to the public policy of the forum". The Court adopted the trial court analysis that our guest passenger act (adopted in 1929) could not "be said to be such a settled policy of the forum as to prevent foreign laws to the contrary being given effect".[3]

In *Rick* and *Eskovitz,* the Court did not find a public policy conflict. It did in *Kircher v Kircher,* 288 Mich 669; 286 NW 120 (1939). Plaintiff sued her husband for injuries inflicted in Colorado, a state permitting interspousal suits contrary to Michigan law. Our Court would not allow her to

---

[3] Compare *Branyan v Alpena Flying Service, Inc,* 65 Mich App 1; 236 NW2d 739 (1975), in which a plane owned by a Michigan corporation crashed in Virginia. The Michigan wrongful death statute does not limit damages; the Virginia statute does. The suits were tried in Michigan but the circuit court limited the damage clauses to the Virginia amounts. In reversing, the Court of Appeals said *lex loci delicti* did not automatically apply to airplane accidents. The Court reviewed public policy and state interest factors and decided "that the limitation of the amount of plaintiffs' damages should be determined in accordance with Michigan law".

sue in Michigan because "it is contrary to public policy in this state to permit one spouse to sue the other for negligent injury, and this closes the court to the action at bar". The public policy subsequently has changed. See *Hosko v Hosko,* 385 Mich 39; 187 NW2d 236 (1971).

The Court in *Tucker v Norfolk & W R Co,* 403 F Supp 1372 (ED Mich, 1975), spoke to that change of public policy. Plaintiff was a Michigan resident, injured when her husband drove into the path of a train in Ohio. The husband claimed the protection of Ohio's interspousal immunity. The Court said:

"The rule * * * is that the domiciliary state's overwhelming interest in the spousal relationship requires deference to its law in determining the applicability of spousal immunities. *Kircher,* although not so stating, actually reflects that rule. In *Kircher,* the Michigan supreme court, by holding, if not its doctrine, established that the entire subject of spousal immunity is a matter of this state's public policy. *Michigan's rejection of [spousal] immunity in* Hosko *is no less a matter of public policy than its adherence to it in earlier years.* The construction placed upon the statute in *Hosko* reflects a determination that the modern spousal relationship is capable of bearing, and ought to bear, certain legal responsibilities that in an earlier time were foreclosed by the legal unity of husband and wife." (Emphasis added.)

Also changed was the public policy regarding Michigan's doctrine of intra-family immunity *(Plumley).*

## III

In this daughter against father suit, we deal with a case which established a new public policy but did not apply the new policy to conflicts of law.

Just as tort law (pre-*Hosko)* viewed husband and wife as one, so was it (pre-*Plumley)* most protective of the parent-child relationship. No matter how severely a child was injured in an automobile accident caused by a parent's negligence, the child had no cause of action.

The state of residence has a substantial interest in the parent-child legal relationship. Michigan's announced public policy is to permit a child "to maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent". That public policy should apply to Michigan residents suing in Michigan courts even though the alleged negligence occurred in Ohio.

Automatic application of *lex loci delicti* in this daughter against father suit would frustrate an announced Michigan public policy. Whether *lex loci delicti* should be applied in other situations is not decided here.

The Court of Appeals is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.

Further, our decision will apply to future cases, to those currently in the trial courts and to those on appeal if the issues were properly preserved.

KAVANAGH, C. J., and WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, J.