**GENERAL MOTORS CORPORATION, a Delaware Corporation, Plaintiff-Appellant,**

v.

**NATIONAL AUTO RADIATOR MANUFACTURING CO., LIMITED, a Foreign Corporation, and Central Stamping, Limited, a Foreign Corporation, jointly and severally, Defendants-Appellees.**

No. 80–1680.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 11, 1982.

Decided Dec. 7, 1982.

Christine Oldani, Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C., Detroit Mich., for plaintiff-appellant.

Daniel G. Beyer, Kerr, Wattles & Russell, M. Sean Fosmire, Ronald E. Wagner, Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, Detroit, Mich., for defendants-appellees.

Before EDWARDS, Chief Judge, ENGEL, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

This is a conflict of laws case in which this court is asked to decide whether the law of Michigan or the law of Ontario, Canada, should be applied to resolve the issues presented on appeal. District Judge Anna Diggs Taylor held that under Michigan conflict of laws rules, the law of Ontario is controlling. She granted summary judgment in favor of the defendants-appellees, National Auto Radiator Manufacturing Co. (National Radiator) and Central Stamping, Ltd. (Central Stamping), both of which are Canadian corporations. GM sought contribution or indemnity under Michigan law from the Canadian Corporations to recover all or part of the amount GM had paid in settlement of an underlying personal injury claim. The underlying claim was brought by an employee of Central Stamping who lost his hand in an accident caused by the malfunctioning of a press which had been sold by GM to National Radiator and ultimately bought by Central Stamping.

Jurisdiction is based upon diversity of citizenship. Michigan rules of conflict of laws control. In an opinion rendered from the bench, the district judge held that the law of Ontario applies in the case, and that under the Ontario Workers' Compensation Act, GM's claims of contribution or indemnity are barred. We affirm.

I

The primary issue on appeal is whether the district court was correct in holding that choice-of-law rules in Michigan require the application of Ontario law, which bars the claims of GM. The following facts are pertinent to this inquiry. GM, a Delaware corporation with its home office in Michigan, purchased a steel gap punch press from Wean United, Inc., the manufacturer, and used the press from 1955 until December 1972. GM then sold the press "as is" to National Radiator, a Canadian Corporation. This sale and transfer took place in Michigan. National Radiator later sold the press to Central Stamping, also a Canadian Corporation.

In 1973, an employee of Central Stamping, Subhash Patel, was injured severely in Windsor, Ontario, when the press malfunctioned. Patel received workers' compensation in accordance with Ontario law. He also filed a civil action in the Circuit Court for Wayne County, Michigan, against GM and Wean United, Inc. Under the Ontario Workers' Compensation Act there is an exclusive remedy provision which bars other actions against "schedule one" employers [1] on behalf of an employee who elects to receive the statutory compensation payments. Rev.Stat.Ont.1970, c. 505 § 8(14). The statute further provides that a third

---

1. Regulation 834 of the Workers' Compensation Act sets forth 27 classes of businesses defined as scheduled one employers. Both National Radiator and Central Stamping fall under class 10, § 1(ii)(c), which refers to employers engaged in the operation of metal stamping work.

party has no right of contribution or indemnity against any "schedule one" employer. Rev.Stat.Ont.1970, c. 505 § 8(11).[2]

Unquestionably both defendant corporations are "schedule one" employers. In his action against GM and the manufacturer Patel argued that the law of Michigan should be applied in that litigation. GM defended by asserting that Ontario law controlled. GM and Wean United, Inc., ultimately settled with Patel out of court for $225,000, of which $125,000 was paid by GM and $100,000 by Wean. GM filed the present action against National Radiator and Central Stamping for contribution or indemnity. Wean also sued for contribution or indemnity in the district court, but has not appealed from the judgment against it.

## II

GM contends that the law of Michigan should be applied in analyzing its claims for contribution or indemnity. Three major theories are offered for reaching this conclusion. First, GM contends that Michigan law applies because the asserted injury in the case arose from GM's contract with National Radiator, and this contract was made and carried out in Michigan. This argument is based on the theory of *lex loci contractus,* that under choice-of-law principles the validity and construction of a contract is determined by the law of the place where the contract was made. As part of this contention, GM states that the actual

wrong suffered for purposes of this case, involving claims of contribution and indemnity, was the payment by GM of $125,000 in settlement of the Patel action. Since the wrong arose from the contract for the sale of the press, and the contract was made in Michigan, it follows, according to GM, that Michigan is the "place of the wrong" for choice-of-law purposes.

Second, GM urges this court to follow Michigan law as the jurisdiction having the more dominant contacts with the facts in the case. Finally, the argument is made that an application of the law of Ontario would violate Michigan public policy. GM emphasizes that its right to contractual contribution or indemnity is based on the use of the language "as is" in the contract for the sale of the press.

## III

Since jurisdiction in the present action is based on diversity of citizenship, the district court properly looked to the conflict of laws rules of Michigan, the place where it sits. *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Sentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In personal injury cases, absent any violation of public policy, Michigan usually has applied the substantive law of the place of the wrong, the *lexi loci delicti. Bennett v. Enstrom Helicopter Corp.,* 679 F.2d 630, 631 (6th Cir.), *aff'd on rehearing,* 686 F.2d 406 (1982), *citing Sweeney v.*

2. Sections 8(11) and 8(14) of the Ontario Workers' Compensation Act, Rev.Stat.Ont.1970, c. 505, provide as follows:

8(11). "In any action brought by a workman of an employer in Schedule 1 or dependant of such workman in any case within subsection 1 or maintained by the Board under subsection 4 and one or more of the persons found to be at fault or negligent is the employer of the workman in Schedule 1, or any other employer in Schedule 1, or any workman of any employer in Schedule 1, *no damages, contribution or indemnity are recoverable for the portion of the loss or damage caused by the fault or negligence of such employer of the workman in Schedule 1, or of any other employer in Schedule 1,* or of any workman of any employer in Schedule 1, and the por-

tion of the loss or damage so caused by the fault or negligence of such employer of the employee in Schedule 1, or of any other employer in Schedule 1, or the workman or any employer in Schedule 1, shall be determined although such employer or workman is not a party to the action." (emphasis added)

14. "The *provisions of this Part are in lieu of all rights of action, statutory or otherwise,* to which a workman or the members of his family are or may be entitled *against the employer of such workman for or by reason of any accident* happening to him or any industrial disease contracted by him on or after the 1st day of January, 1915, while in the employment of such employer and no action lies in respect thereof." (Emphasis added.)

*Sweeney,* 402 Mich. 234, 236, 262 N.W.2d 625, 626 (1978).

Despite contention by GM that the place of the wrong for its contribution or indemnity claims is Michigan, it is clear that the place where the underlying personal injury occurred, which is Ontario in the present case, has been deemed the place of the wrong for choice-of-law purposes. *See generally Hill v. Clark Equipment Co.,* 85 Mich. App. 1, 270 N.W.2d 722 (1978). The rationale offered by the courts for this conclusion is that since an action for indemnity or contribution is entirely derivative from the principal claim, it also should be governed by the law of the place where the principal claim arose. *Alabama Great Southern R.R. v. Chicago & N.W. Ry. Co.,* 493 F.2d 979 (8th Cir.1974); Annotation, "What law governs right to contribution or indemnity between tortfeasors," 95 A.L.R.2d 1096, 1102–08 (1964). The question, however, is whether Michigan choice-of-law principals would consider the place of the wrong as determinative in this case.

The most recent decision of the Michigan Supreme Court, *Sexton v. Ryder Truck Rental, Inc.,* 413 Mich. 406, 320 N.W.2d 843 (1982), announced that it is no longer the law in Michigan that courts should apply the law of the place of the wrong in every personal injury case. This decision was handed down subsequent to the district court decision in the present case. In *Bennett v. Enstrom Helicopter Corp.,* 686 F.2d 406 (6th Cir.1982) (on rehearing), this court summarized the *Sexton* decision as follows:

> *Sexton* produced two "majority" decisions, with one justice joining in two opinions. Justice Williams' opinion established two rules:
>
> (1) "[W]here Michigan residents or corporations doing business in Michigan are involved in accidents in another state and appear as plaintiffs *and* defendants in Michigan courts, the courts will apply the *lex fori,* not the *lex loci delicti* ..., without reference to any particular state policy." *Sexton,* 320 N.W.2d at 854, Williams, J. (Emphasis added).

> (2) Michigan's owners' liability statutes, including the aircraft owner's statute, MCLA § 259.180a, will be given "uniform application to residents traveling outside of Michigan as well as [to] persons within our state." *Id.* at 856. The rationale for this rule is that these statutory causes of action are founded not on any conduct of the parties outside of Michigan "but on the relationship between *Michigan* owners and *Michigan* operators." *Id.* (Emphasis added).

> \* \* \* \* \* \*

> Justice Kavanagh's second "majority" opinion held that the place of the wrong is no longer a "fact controlling or even of great significance" to choice-of-law questions, since the state clearly has the "power" to regulate the extraterritorial consequences of the intrastate *status* of ownership. *Id.* at 407.

Justice Levin, who joined in both opinions in *Sexton,* also provided some helpful comments with respect to the holdings of the case:

> Justice WILLIAMS' opinion would hold that, in an action commenced in Michigan growing out of an accident in another state, Michigan common and statutory law shall be applied whenever the plaintiff and defendant are both either residents of or corporations doing business in Michigan. Justice KAVANAGH'S opinion would hold that in a tort action commenced in Michigan, the domestic law of this state shall govern absent a reason for applying the law of another state and that the place of the wrong is not a reason for not applying Michigan domestic law.

413 Mich. at 441, 320 N.W.2d at 857.

It is important to note that the *Sexton* court reached its conclusions "on the facts and reasoning herein developed," and expressly declined to adopt the "law of dominant contacts or any other particular methodology, although any such reasoning may, of course, be argued where persuasive and appropriate." *Id.* at 433, 320 N.W.2d at 854.

We conclude that the present case is distinguishable from *Sexton* on its facts and that the trial court was correct in applying the substantive law of Ontario. Not all of the corporate parties in this case are Michigan corporations. None of them was incorporated in Michigan, and although GM maintains its principal place of business there, no evidence was offered that either of the defendant Canadian corporations do any business in Michigan. Furthermore, the individual plaintiff-employee in the original action against GM was a Canadian resident when the injury occurred and at the time the lawsuit was filed. In that case, in an opinion rendered on the motion of GM for summary judgment, the Circuit Court for Wayne County, Michigan, accepted the argument of GM that Ontario law should be applied in analyzing Patel's claims. It would be an anomalous result to hold that the law of Ontario should apply in the underlying personal injury action, but that the law of Michigan applies to the derivative claims of contribution or indemnity brought in a subsequent suit. *See Bennett v. Enstrom Helicopter Corp., supra,* 686 F.2d at 407–08 (where upon similar reasoning this court distinguished *Sexton* and held that New Zealand law, the *lex loci delicti,* applied to bar the plaintiff's tort claims).

Another distinguishing factor between the present case and *Sexton* is that the rationale in *Sexton* for applying Michigan law was found partially upon the substantial interest Michigan had in the motor vehicle owner-operator relationship under the facts in that case. *See Sexton, supra,* 413 Mich. at 434–39, 320 N.W.2d at 854–56. This interest is evidenced by reference to the owner liability statutes of Michigan, and by the fact that the motor vehicle owner in *Sexton* was a Michigan resident. In the present case, however, the employer-employee relationship is of paramount importance, and Ontario has the overriding interest in this relationship since the underlying suit involved an application of the Ontario Workers' Compensation Act to a claim by an Ontario employee against his employer. As the district court noted, this is of particular relevance in that it "is carefully designed to avoid litigation of exactly the kind plaintiffs are pursuing here."

We find substantial support for the conclusion of the district court that Ontario law should apply. The ultimate conclusion of the district court was that "the significant interest of Ontario in enforcing its carefully balanced statutory compensation scheme for the benefit of its workers and those who do business in that jurisdiction outweighs the interest of the State of Michigan and does not substantially conflict with the public policy of the State of Michigan." As correctly held by the district court, the fact that the sale of the press from GM to National Radiator took place in Michigan was not sufficient to overcome Ontario's interest.

We agree with the district court that there is no violation of Michigan public policy in applying Ontario substantive law, which bars the claims of GM.

The district judge noted that the major cases relied upon by GM for the proposition that Michigan public policy required an application of Michigan law involved situations where the contact with the other jurisdiction was isolated and fortuitous. *See Sweeney v. Sweeney,* 402 Mich. 234, 262 N.W.2d 625 (1978); *Kircher v. Kircher,* 288 Mich. 669, 286 N.W. 120 (1939); *Shaheen v. Schoenberger,* 92 Mich.App. 491, 285 N.W.2d 343 (1979); *Storie v. Southfield Leasing, Inc.,* 90 Mich.App. 612, 282 N.W.2d 417 (1979), *aff'd* 413 Mich. 406, 320 N.W.2d 843 (1982); *Branyan v. Alpena Flying Service, Inc.,* 65 Mich.App. 1, 236 N.W.2d 739 (1975). Both parties in each of these cases were Michigan residents, and the only contact with the other jurisdiction was that the injury occurred there. This is not the situation in the present case. We agree with the district court that there is no violation of Michigan public policy in applying Ontario substantive law in this case.

Affirmed.