BRANYAN v ALPENA FLYING SERVICE, INC.
BEEKMAN v ALPENA FLYING SERVICE, INC.

1. DAMAGES—WRONGFUL DEATH ACTIONS—CONFLICT OF LAWS—LEX
LOCI DELICTI—APPLICABILITY.

The rule of *lex loci delicti* should no longer automatically deter-
mine which body of law·governs in conflict of law cases where
questions as to the measure, extent or amount of damages
recoverable in a wrongful death action are to be determined;
considerations of public policy and analysis of the respective
interests of the jurisdictions involved should accompany the
judicial decision-making process.

2. DAMAGES—WRONGFUL DEATH ACTIONS—PUBLIC POLICY—STATUTES.

There is no limitation on the amount of damages that can be
awarded in wrongful death actions brought in the courts of this
state; the public policy of this state as expressed by the wrong-
ful death statute and judicial decisions is that a plaintiff in a
wrongful death action may recover such damages as a court or
jury deems fair and just (MCLA 600.2922).

3. DEATH—NEGLIGENCE—STATUTES—WRONGFUL DEATH STATUTE—
DAMAGES—PUBLIC POLICY—LEGISLATIVE INTENT.

The wrongful death statute as a matter of public policy applies
not only to those cases where the death occurred in Michigan,
but likewise to those situations where the accident which
caused the death occurred in another jurisdiction; the Legisla-
ture would have included a provision in the statute limiting the
amount of damages awardable where the death occurred in
another jurisdiction if it intended to limit the damages awarda-
ble in such cases (MCLA 600.2922).

4. DAMAGES—DEATH—STATUTES—WRONGFUL DEATH STATUTE—CON-
FLICT OF LAWS—SIGNIFICANT CONTACTS—PUBLIC POLICY.

The limitation on the amount of damages awardable to a plaintiff
in a wrongful death action in Michigan which arose out of an

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 22 Am Jur 2d, Death § 290.

Conflict of laws as to measure or amount of damages in death
actions. 92 ALR2d 1180.

airplane crash in another jurisdiction is properly determined in accordance with Michigan law where an examination of all the relevant factors in the case, including all significant contacts, reveals that Michigan's interest in the measure of damages to be recovered is great, the lawsuit involves no concern of the other jurisdiction, and Michigan's public policy on the issue of limiting such damages differs from that of the other jurisdiction; the Court of Appeals will respect Michigan's legislative public policy (MCLA 600.2922).

Appeals from Wayne, Thomas Roumell, J., and Oakland, William P. Hampton, J. Submitted June 17, 1975, at Detroit. (Docket Nos. 19846 and 23125.) Decided October 13, 1975.

Complaint by Janice S. Branyan, executrix of the estate of Charles E. Branyan, deceased, against Alpena Flying Service, Inc. for wrongful death. Employers Commercial Union Insurance Company intervened as plaintiff. Complaint by Charleen F. Beekman, executrix of the estate of Myron Beekman, deceased, against Alpena Flying Service, Inc. for wrongful death. Defendant's motions to reduce the *ad damnum* clauses in plaintiffs' complaints granted. Plaintiffs Branyan and Beekman appeal by leave granted and cases consolidated for hearing. Reversed and remanded.

*Moll, Desenberg, Purdy, Glover & Bayer,* for plaintiff Branyan.

*Hartman, Beier, Howlett, McConnell & Googasian (Friedrich K. Juenger,* of counsel), for plaintiff Beekman.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C. (Haggerty & Franklin,* of counsel), for defendant.

Before: T. M. BURNS, P. J., and QUINN and M. J.
KELLY, JJ.

T. M. BURNS, P. J. This is what is commonly
known as a conflict-of-laws case. Both plaintiffs
were granted leave to appeal and the cases were
consolidated by order of this Court on March 26,
1975. For purposes of this appeal,[1] we shall set
forth the following "Concise Statement of Facts
and Proceedings", certified by the trial court and
stipulated to by counsel in the *Branyan* case as the
statement of facts which governs this appeal:

"On August 11, 1970, Alpena Flying Service, Inc., a
Michigan corporation, and The Detroit Edison Com-
pany, a corporation organized and existing concurrently
under the laws of Michigan and New York with its
principal office and facilities in Michigan, entered into a
contract in Michigan under which Alpena was to pro-
vide air passenger service to Edison.

"Alpena was in the business of providing air taxi-
charter service primarily to Michigan based companies
(e.g., Michigan Bell Telephone, Chrysler Corporation,
The Detroit News) and Michigan citizens (e.g., execu-
tives of said companies). Alpena flights routinely origi-
nated and returned or terminated in Michigan with
Michigan residents making up the principal passenger
manifest.

"On October 16, 1971, pursuant to said contract,
Alpena left Detroit City Airport on a flight to Hot
Springs, Virginia. Aboard said plane were four passen-
gers, including plaintiff's decedent who was employed
by an Edison subsidiary in Michigan. The passengers
were being flown to Virginia for a meeting with Walker
Cisler, Chairman of the Board of Detroit Edison; and
the flight was intended to return to Detroit.

"The plane crashed in Hot Springs, while attempting

[1] We acknowledge the "Stipulated Concise Statement of Facts and
Proceedings" in the *Beekman* case but do not set it forth in this
opinion since the facts stated therein are not necessary to our
disposition of the issue raised on appeal.

to land, killing all passengers and crew. The crew consisted of a pilot and co-pilot, both Michigan citizens. The pilot is survived by a Michigan widow and children. The co-pilot's parents and next of kin are Michigan citizens.

"The four passengers were:

"Charles E. Branyan, a Michigan citizen survived by a Michigan widow and two Michigan children.

"Myron Beekman, a Michigan citizen who left a widow and four children, including two minors, all of whom with the exception of the eldest child are Michigan citizens.

"Kozo Odajima, who had resided in Michigan for more than a year immediately preceding his death, with his wife and minor child.

"Yoshimichi Hori, who was aboard the plane by virtue of business he had been and was conducting with Michigan corporations.

"The accident has resulted in three wrongful death actions in Michigan courts; the instant case, one by the Estate of Hori in Wayne County Circuit Court and one by the Estate of Beekman in Oakland County Circuit Court. Each suit contains counts in negligence and breach of contract.

"At the time of his death, Charles E. Branyan was 46 years old and had annual wage and fringe benefits in excess of $27,000. Myron Beekman was 50 years old at the time of the accident and had annual wages and fringes of approximately $40,000. The *Ad Damnum* clauses with respect to each count in all suits are in excess of $75,000.

"Virginia statutes Annotated, Sec. 8-363 limits the amount of damages that may be awarded in a wrongful death action to: out-of-pocket expenses for hospital, medical and ambulance service expenses; $500 for funeral expenses; $25,000 for sorrow and mental anguish; and $50,000 for loss of probable earnings, care, attention and society. The Michigan wrongful death statute, MCLA 600.2922 under which this action is brought, contains no limitations on the amount of damages that may be awarded."

In each case, the defendant's motion to reduce the plaintiffs' *ad damnum* clauses to $75,000 was granted, each trial court holding that the law of Virginia, the place where the accident occurred, controlled the question of limitation of damages.

There is only one question before this Court, namely, whether the limitation on the amount of plaintiffs' damages should be determined in accordance with Michigan law or Virginia law.

This Court has never been called upon to decide whether to apply another state's limitation of the amount of recovery in a wrongful death action brought in Michigan in a case where the occurrence causing death was an airplane crash which took place in the other state. However, that Michigan has adhered to the rule of *lex loci delicti* cannot be denied. *Abendschein v Farrell,* 382 Mich 510; 170 NW2d 137 (1969). Defendant argues that as an intermediate appellate court, we may neither adopt a conflict-of-laws standard different from that traditionally followed in Michigan nor entertain an invitation to overrule Supreme Court precedent. However, we need not decide whether *Abendschein* should be overruled in deciding the question before us since the rule enunciated in *Abendschein* does not apply to this case. The *Abendschein* Court expressly excluded the *lex loci delicti* rule from cases involving airplane accidents when it stated at 519; 170 NW2d 140:

"Bearing in constant mind that *this case and its issue deals only with actions at law for damages arising out of motorcar (not airplane) accidents".* (Emphasis added.)

Having explained why we cannot, on the authority of *Abendschein v Farrell, supra,* declare that the plaintiffs are limited in the amount of damages

they may recover, we now turn to a disposition of this case which we think both valid and within our authority.

While the general rule is that questions as to the measure, extent, or amount of damages recoverable in a wrongful death action are to be determined by the law of the place where the wrong causing the death occurred, a number of decisions support the view that under certain circumstances the law of the state of the forum may govern these questions, although the wrong causing death occurred in another state. See generally 92 ALR2d 1180, 1193; see also *Moats v The Metropolitan Bank of Lima,* 40 Ohio St 2d 47; 319 NE2d 603 (1974).

In *Reich v Purcell,* 67 Cal 2d 551, 555; 63 Cal Rptr 31; 432 P2d 727 (1967), the California Supreme Court rejected the *lex loci delicti* rule in favor of the more modern approach of most significant relationship. Speaking for the Court, Chief Justice Traynor stated:

"Ease of determining applicable law and uniformity of rules of decision, however, must be subordinated to the objective of proper choice of law in conflict cases, i.e., to determine the law that most appropriately applies to the issue involved.[2] Moreover, as jurisdiction after jurisdiction has departed from the law of the place of the wrong as the controlling law in tort cases, regardless of the issue involved, that law no longer affords even a semblance of the general application that was once thought to be its great virtue. We conclude that the law of the place of the wrong is not necessarily

---

[2] *See* Leflar, *Choice-Influencing Considerations In Conflicts Law,* 41 NYU L Rev 267, 279–282 (1969). Prof. Leflar cites five choice-influencing considerations to be applied when selecting the proper rule of law in a conflicts of law situation. They are: (a) predictability of results; (b) maintenance of interstate and international order; (c) simplification of the judicial task; (d) advancement of the forum's governmental interests; and (e) application of the better rule of law.

the applicable law for all tort actions brought in the courts of this state." (Citations omitted.)

Speaking to the question of damages, Chief Justice Traynor noted:

"Limitations of damages * * * have little or nothing to do with conduct. They are concerned not with how people should behave but with how survivors should be compensated. The state of the place of the wrong has little or no interest in such compensation when none of the parties reside there." 67 Cal 2d 551, 556; 432 P2d 727, 730–731.

See also, *Ingersoll v Klein,* 106 Ill App 2d 330; 245 NE2d 288 (1969), *Fabricius v Horgen,* 257 Iowa 268; 132 NW2d 410 (1965), *Tramontana v SA Empresa De Viacao Aerea Rio Grandense,* 121 US App DC 338; 350 F2d 468 (1965), *Griffith v United Air Lines, Inc,* 416 Pa 1; 203 A2d 796, 797 (1964).

After carefully reviewing and considering the leading authorities, we conclude that *Reich v Purcell, supra,* and the other cases cited represent the better view. We agree with this line of authority that the strict *lex loci delicti* rule should be abandoned in favor of the more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court. More particularly, we think that considerations of public policy and analysis of the respective interests of the jurisdictions involved should accompany the judicial decision-making process in these types of conflict-of-laws cases, and that the rule of *lex loci delicti* should no longer serve to automatically determine which body of law should govern.

### Public Policy

Is it contrary to the public policy of the State of

Michigan that damages in a wrongful death action be limited to a specified amount? The public policy of a state is fixed by its constitution, its statutory law, and the decisions of its courts; and when the Legislature enacts a law within the limits of the constitution, the enactment insofar as it bears upon the matter of public policy is conclusive. *Lieberthal v Glens Falls Indemnity Co,* 316 Mich 37, 40; 24 NW2d 547 (1946). Michigan's public policy relative to the phase of the law being considered here has been definitely fixed by statute. As to the amount of damages recoverable in wrongful death actions in Michigan, MCLA 600.2922; MSA 27A.2922 provides in pertinent part:

"Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the *court or jury may give such damages, as, the court or jury, shall deem fair and just,* under all of the circumstances to those persons who may be entitled to such damages when recovered *including damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased."* (Emphasis added.)

In accord with the above provision, we have held that the question of damages in cases of fatal injuries is largely a matter for the discretion of the jury. *Hoffman v Rengo Oil Co,* 20 Mich App 575; 174 NW2d 155 (1969). The public policy of this state as expressed by the statute and judicial

decisions is that a plaintiff in a wrongful death action may recover such damages as a court or jury deems just.[3] The Legislature did not place any limitation on the amount of damages that could be awarded in wrongful death actions, and we are of the opinion that the statute, as a matter of public policy, not only applies to those cases where the death occurred in Michigan, but likewise to those situations where the accident, which caused the death, occurred in another jurisdiction. Had the Legislature intended to limit the amount of damages awardable where the death occurred in another jurisdiction, it would have included such a provision in the statute. Having failed to do so, the inescapable conclusion we must draw is that the trial court, in granting defendant's motions to reduce the plaintiffs' *ad damnum* clauses to $75,000, acted contrary to the public policy of this state and was, therefore, in error.

### *Interests of Michigan and Virginia*

When we weigh all of the relevant factors in this case, including all significant contacts, the scales tip heavily in Michigan's favor. Virginia, the state in which the accident occurred, has relatively little interest in the measure of damages to be recovered. Michigan's interest in the amount of recovery, on the other hand, is great. The relationship between the decedents and the defendant was entered into in Michigan.[4] Both dece-

---

[3] This is also the rule in the overwhelming majority of states. The number of states limiting damages in wrongful death cases has been steadily dwindling over the years until there are now only seven of them. *See* 5 Martindale-Hubbell Law Digests (1974 ed).

[4] We are aware that the contract to provide air passenger service was entered into between defendant and Edison. For purposes of this discussion only we have listed the decedents as parties to that contract.

dents were Michigan residents, the aircraft was owned and operated by a Michigan corporation and was hangared here. Our state, the domicile of decedents and their families, is vitally concerned not only with the lawful administration of decedents' estates, but also with the interest of fair and adequate compensation for the surviving dependents of Michigan residents killed by accident, to the extent of granting full recovery, including expected earnings. Furthermore, this Court will continue to respect Michigan's legislative public policy as embodied in MCLA 600.2922; MSA 27A.2922. Finally, as mentioned earlier, the only significant interest of Virginia in this lawsuit is that it is the place where the accident occurred, a factor which we consider to be insufficient to outweigh the above considerations. We find that all governmental interest in this case is in Michigan, and we further find that no Virginia concern is involved or disturbed herein.

Therefore, after examining all the relevant factors in this case, including all significant contacts and the public policy of this state, we find that only one conclusion can be reached, namely, that the limitation of the amount of plaintiffs' damages should be determined in accordance with Michigan law. Accordingly, the trial court erred reversibly when it granted defendant's motion to reduce the plaintiffs' *ad damnum* clauses.

Reversed and remanded. Costs to plaintiffs.