BURTON DRYWALL, INC v KAUFMAN

*In re* CERTIFIED QUESTIONS

Docket Nos. 58592, 59630. Argued October 7, 1977 (Calendar Nos. 17, 18).—Decided March 13, 1978.

Burton Drywall, Inc., brought an action to foreclose a mechanic's lien against Harry Kaufman and Ben Kaufman, doing business as Westland Park Apartments, Kaufman Brothers Investment Company, Citizens Mortgage Company, and Joseph Rickard. Wayne Circuit Court, Charles S. Farmer, J., granted summary judgment for defendants on the ground that the mechanic's lien had not attached because the plaintiff had failed to serve a notice of intent to claim a lien within 90 days of first furnishing the materials or labor. The plaintiff contended that the notice is not required where the party seeking the lien deals directly with the owner. The Court of Appeals, Bashara, P.J., and Quinn, J. (R. B. Burns, J., dissenting), declined to follow a previous decision of the Supreme Court to that effect and affirmed (Docket No. 19113). Plaintiff appeals.

The United States District Court for the Eastern District of Michigan, Charles W. Joiner and Cornelia G. Kennedy, JJ., certified two questions of Michigan law concerning the validity of certain mechanic's liens involved in cases now pending before the Federal District Court to the Supreme Court. The first question is whether notice of intent to claim a mechanic's lien must be given in order for the lien to attach where the person seeking the lien dealt directly with the owner. The second is whether, if the answer to the first question is in the affirmative, the decision of the Court of Appeals announcing it applies retroactively. *Held:*

1. A lien claimant who has dealt directly with the owner need not give a notice of intent to claim a lien in order to perfect the lien. The direct dealing exception to the notice requirement is not judicially created; it is inherent in the language of the mechanic's lien statute. From its inception in 1893, the proviso in the lien statute requiring notice of furnishing materials or labor and also, by amendment, notice of intent

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 53 Am Jur 2d, Mechanic's Liens § 170.
[2] 5 Am Jur 2d, Appeal and Error §§ 760–767.

to claim a lien and of the right of the owner to demand a sworn statement from the contractor has applied and still applies only to a person furnishing labor or material "to [for] a contractor or subcontractor". A claimant dealing directly with the owner does not furnish labor or material to or for a contractor, and such a person is not required to serve "a notice as in this section provided". The reason for the notice requirement and the distinction between one who deals directly with the owner and one who does not is that in the first situation the owner knows there is a claim against him, but in the second case he may be unaware of a claim without such notice.

2. After the *Burton Drywall* case was decided in the Court of Appeals the amount owing to the lien claimant in that case was adjudicated and tendered to it. Nevertheless the decision of the Court of Appeals created uncertainty concerning the law, and the matter is of sufficient ongoing importance both to the lien claimant in that case and to the jurisprudence to warrant resolution at this time.

The decision of the Court of Appeals in *Burton Drywall* is reversed. The response in *Certified Questions* is that there is a direct dealing exception, and it is unnecessary to answer the second question.

69 Mich App 85; 244 NW2d 367 (1976) reversed.

1. MECHANICS' LIENS—NOTICE—DIRECT DEALING.

A mechanics' lien claimant dealing directly with the owner is not required by the statute to provide either notice of furnishing materials or labor, or notices of intention to claim a lien and of the owner's right to demand a sworn statement from the contractor; those requirements by their terms apply only to a person furnishing labor or material "to [for] a contractor or subcontractor" (MCL 570.1; MSA 26.281).

2. APPEAL AND ERROR—MECHANICS' LIENS—MOOTNESS.

An erroneous decision of the Court of Appeals that a mechanics' lien claimant is required to give notice of intent to claim a lien even though the claimant dealt directly with the owner of the property created uncertainty concerning the law, and the matter is of sufficient ongoing importance both to the lien claimant and to the jurisprudence to warrant resolution by the Supreme Court even though the lien claimant has been paid (MCL 570.1; MSA 26.281).

*Hertzberg, Jacob & Weingarten, P.C.* (by *Peter A. Nathan),* for plaintiff Burton Drywall, Inc.

*Honigman, Miller, Schwartz & Cohn (John Sklar,* of counsel) for plaintiff Chase Manhattan Bank.

*Barris, Sott, Denn & Driker* (by *Sharon M. Woods* and *Stephen E. Glazek)* for plaintiff Republic Mortgage Investors.

*Weiner & Hauser* for defendants Kaufman, Kaufman Brothers Investment Company, and Citizens Mortgage Company.

*David Goldman* for defendant City Service Insulation Co.

LEVIN, J. The issue is whether, to preserve the right to a mechanic's lien, one who deals directly with an owner must give notice of intention to claim a lien.

In *Mielis v Everts,* 264 Mich 363; 249 NW 875 (1933), this Court held that notice was not required where the lien claimant and the owner dealt directly with each other.

The Court of Appeals, in *Burton Drywall, Inc v Kaufman,* 69 Mich App 85, 89, 90; 244 NW2d 367 (1976), declared that *Mielis* "was erroneously decided", that if the decision were "examined today by the Supreme Court, it would be overruled", and held that notice of intention to claim a lien is required even when the claimant deals directly with the owner. We granted leave to appeal.[1]

Judges of the United States District Court for the Eastern District of Michigan, stating that a question of state law was raised by that declination to follow *Mielis,* "which had been understood as having established an exception for lien claim-

---

[1] 399 Mich 875 (1977).

ants dealing directly with owners", certified the following question:[2]

"Must notice of intent to claim a lien as described by MCL 570.1; MSA 26.281, be given in order to perfect the lien of a lienor who dealt directly with the owner?"[3]

This Court set oral argument and authorized interested parties to file briefs.[4]

We adhere to *Mielis.* We reverse *Burton Drywall* and in *Certified Questions* respond that there is a direct dealing exception.

I

The statute provides generally that suppliers of labor and material shall have a mechanic's lien upon the premises. A proviso requires that persons desiring to claim a lien "shall within 90 days after furnishing the first of such material or performing the first of such labor or engineering or surveying services, or renting or leasing equipment *for any contractor or subcontractor*" serve on the owner written notice informing him

(i) of the nature of the materials being furnished or labor being performed, and a description of the premises where furnished,

---

[2] Actions to foreclose real estate mortgages are pending in the district court. Lien claimants who did not serve notice of intention to claim a lien have asserted that they were not obliged to do so because they dealt directly with the owners.

See GCR 1963, 797.2, authorizing a federal court or a state appeals court to certify a question of law to this Court. This is the first instance in which this Court has answered a question so certified.

[3] They also certified a question concerning the retroactivity of the Court of Appeals decision in *Burton Drywall, Inc v Kaufman,* 69 Mich App 85; 244 NW2d 367 (1976), an issue which our disposition makes it unnecessary to address.

[4] 400 Mich 1029 (1977).

(ii) a lien will be claimed on the premises for amounts unpaid, and

(iii) of his right to demand a statement under oath "from such contractor or subcontractor prior to payment of any money on such contract". (Emphasis supplied.)

The statute continues:

"No person shall have a right to claim a lien as in this act provided, unless and until he shall have served a notice as in this section provided * * * ."[5]

---

[5] MCL 570.1; MSA 26.281. The text of the proviso, which also prescribes the form of the notice to be given, is as follows:

"Provided, That any person, firm or corporation furnishing materials or performing labor of any kind entering into the construction of any such building, swimming pool, structure, foundation, cellar, basement, well, sewer, sewage disposal equipment, water line and pumping equipment or walk, or furnishing or planting of nursery stock or who shall survey or plat any lot or parcel of land, or portion thereof, or engineer or design any sewers, water lines, roads, streets, highways, sidewalks, or prepare and furnish pursuant to such contract to such owner, part owner or lessee of any interest in real estate any survey, plat, plat of survey or design or engineering plan, or plans, for the improvement of any lot or parcel of land not exceeding one-quarter section of land, or who shall rent, lease or supply contractor's equipment shall within 90 days after furnishing the first of such material or performing the first of such labor or engineering or surveying services, or renting or leasing equipment for any contractor or subcontractor, serve on the owner, part owner or lessee of the premises, or his agent, if such owner, part owner or lessee has a known agent in charge of such structure, swimming pool, improvement, foundations, cellars, basements, wells, sewers, sewage disposal equipment, water lines and pumping equipment, walk or walks, personally or by mailing by certified mail, return receipt demanded, to the last known address of such owner, part owner or lessee, or his agent in charge of said premises, as aforesaid, a written notice, which notice shall be such as will inform the owner, part owner or lessee of the premises, or his agent, of the nature of the materials being furnished, or labor being performed, or to be performed, and a description of the premises where furnished, which notice shall notify such owner, part owner or lessee of said premises that such person, firm or corporation furnishing materials or performing labor will claim a lien upon such premises for any amounts unpaid for such materials so furnished or labor performed, or equipment leased, also such part or portion of section 4 of this act as will clearly notify such owner, part owner, or lessee of said premises, that he has a right to demand a statement under oath from such contractor or subcontractor prior to payment of any money on such contract. If neither of

such persons can be found for service within the county where the premises are situated, or written notice has not been received, then the notice shall be served by posting in some conspicuous place on the premises within 5 days after the same might have been personally served, if the agent or principal had been found. Such notice shall be in substantially the following form:

"To _____, Take notice that the undersigned is furnishing _____ to _____ certain labor or materials for building, excavating, or altering, improving, repairing, erecting or ornamenting, surveying, or designing engineering plans or surveys for the installation of swimming pools, sewers, water lines, roads, streets, highways or sidewalks, or is renting or leasing equipment as the case may be, a certain _____, situated on or around or in front (or the improving by furnishing nursery stock or labor in connection therewith) of the following described property: _____ You are further notified that the undersigned _____ will claim a lien upon the foregoing described premises, and any and all additions, alterations and improvements thereto for any amounts now and hereafter owing and unpaid to the undersigned for the performance of such labor, or for the furnishing of such materials, or both. You are further notified that you may at any time retain from any moneys due or to become due to the original contractor, an amount sufficient to pay all demands owing or unpaid to any subcontractor, material man or laborer, who files this notice with you. The original contractor shall, whenever any payment of money shall become due from you, or whenever he desires to draw any money from you on such contract make out and give to you or your agent a statement under oath of the number and names of every subcontractor or laborer in his employ, and of every person furnishing materials, giving the amount, if anything, which is due or to become due to them, or any of them, for work done or materials furnished, and you may retain out of any money then due, or to become due to the contractor, an amount sufficient to pay all demands that are due or to become due to such subcontractors, laborers and material men, as shown by the contractor's statement, and pay the same to them according to their respective rights, and all payments so made shall, as between you and such contractor be considered the same as if paid to such original contractor.

"Such notice, solely as to labor, however, shall be sufficient if served at any time subsequent to said 90 days, but before the original contractor shall make out and give to the owner, part owner or lessee or his agent, a statement under oath of the number and names of every subcontractor or laborer in his employ, and of every person, firm or corporation furnishing materials, giving the amount, if anything, which is due or to become due on them or any of them, for work done or materials furnished as required by section 4 of this act. The owner, part owner or lessee shall not be liable to the subcontractor, material men or laborers, for any greater amount than he contracted to pay the original contractor, and shall be entitled to recoup any damages which he may sustain by reason of any failure or omission in the performance of such contract, but the risk of all payments made to the original contractor after he shall have received the notice above mentioned shall be upon the owner, part owner or

The requirements of (i) above are derived from a proviso in the statute as amended in 1893.[6] Those set forth in (ii) and (iii) and the condition precedent of service of notice of intention to claim a lien were added in 1929.[7]

The 1893 proviso required that the notice be served within ten days "after furnishing the first of such material, or performing the first of such labor *to any contractor or subcontractor"*. The phrase *"to* any contractor or subcontractor" was printed as *"or* any contractor or subcontractor" in a 1941 amendment.[8] It became *"for* any contractor or subcontractor" in a 1958 amendment.[9] We do not perceive nor is it claimed that *"for* any contractor" has a meaning other than *"to* any contractor". (Emphasis supplied.)[10]

---

lessee until the expiration of 90 days, within which claims for lien may be recorded as hereinafter provided, and no payment made to any contractor before the expiration of said 90 days shall defeat any lien of any subcontractor, material man or laborer, unless such payment has been distributed among the subcontractors, material men or laborers, or if distributed in part only, then to the extent of such distribution. No person shall have a right to claim a lien as in this act provided, unless and until he shall have served a notice as in this section provided, and proof of the service of such notice shall be attached to the verified statement or account when recorded with the register of deeds as provided in section 5 of this act."

[6] 1893 PA 199; 1897 CL 10710. There were earlier enactments. See, *e.g.,* 1891 PA 179 and 1879 PA 258. The 1891 act provided:

"That any person, firm or corporation furnishing material of any kind entering into the construction of such building or structure shall, within ten days after the sale of the same to any contractor or subcontractor, serve on the owner, part owner or lessee of the premises or his agent a fairly detailed statement of the goods so sold, if such owner, part owner or lessee resides in or has a known agent in the county in charge of such structure or improvement."

[7] 1929 PA 264; 1929 CL 13101.

[8] 1941 PA 266.

[9] 1958 PA 213.

[10] The word "or" may have been a typographical error which upon discovery was "corrected" to "for" on the assumption that the error was the dropping of "f" without recognition that it may instead have been in printing "to" as "or". Alternatively, the change may have been purposeful, an effort to improve the diction of the proviso.

The argument that "for any contractor or subcontractor" does not

II

In *Mielis,* decided under the statute as amended in 1929, this Court rejected a contention that a lien was invalid because notice of intention to claim a lien had not been served on the owners:

"It was not necessary. The lien claimants were dealing with the part-owner, not with a contractor. 1929 CL 13101; *Smalley v Ashland Brown-Stone Co,* 114 Mich 104 [72 NW 29 (1897)]." *Mielis v Everts, supra,* p 364.

The Court of Appeals, in *Burton Drywall,* stated that *Mielis'* reliance on *Smalley* "was misplaced" because:

—*Smalley* had found that notice under the statute, as amended in 1893, "was for the protection of the subcontractor, materialman or laborer to preserve its claim against the owner, and as such, was not a condition precedent to the lien attaching"

—"it apparently escaped the attention of the *Mielis* Court" that the statute had been amended to state that there was no right of lien "unless and until" notice was served.[11]

—*Webster v Cooper Development Co,* 266 Mich 505, 507; 254 NW 186 (1934), construed "unless and until" as requiring notice as a condition precedent to the perfection of a mechanic's lien. *Smalley,* accordingly, "was overruled *sub silentio* by *Webster.* Therefore, the *Mielis* exception is

---

relate to the person for whom material or labor is provided but refers, rather, to persons who rent or lease contractor's equipment, ignores the history of the statute and that the words "renting or leasing equipment" were not added until 1963 PA 104, a number of amendments after "to" became "or" and "or" became "for".

[11] *Burton Drywall, Inc v Kaufman, supra,* p 89.

grounded on authority no longer of precedential value."[12]

—the statement in *Wallich Lumber Co v Golds,* 375 Mich 323, 328; 134 NW2d 722 (1965), that "notice is not required of a person who contracts directly with the owner. *Mielis v Everts,* 264 Mich 363, 364", was obiter dictum.[13]

*Webster* did not "overrule" *Smalley.* It stated only that the statute had been subsequently changed. *Webster* held that by reason of amendments of the statute, compliance with the 1929 notice proviso "is a condition precedent to the acquisition of the lien".[14]

In *Webster,* the lien claimant, who had furnished materials *to a contractor,* failed to file with the Register of Deeds proof of service of notice of intention to claim a lien. Since the claimant had dealt with a contractor, *Webster* did not consider the direct dealing exception recognized in *Mielis.*

It may be, as stated by the Court of Appeals, that the *Mielis* Court overlooked the 1929 amendments and that those amendments superseded the holding in *Smalley* that service of notice was not prerequisite.[15] Another hypothesis is that the Court in *Mielis* was aware of the significance of the 1929 amendments and *Smalley* was cited be-

---

[12] *Id.,* p 90.

[13] *Id.,* p 88.

[14] *Id.*

[15] While the briefs in *Mielis v Everts,* 264 Mich 363; 249 NW 875 (1933), do not highlight the 1929 amendments, lien claimant Mielis' brief contains the following statement:

"Question No. 1: Is it necessary that notice of intention to claim a lien be served by a laborer upon the owner?

"Appellant relies upon the provisions of Section 13101 of the Compiled Laws of 1929. We submit that the provisions of this section of the statute are not applicable where the lienor contracts directly with the part owner." Michigan Supreme Court Records and Briefs (104–109 June Term, 1933, No. 108).

cause it inferentially recognized that the proviso has no application to one dealing directly with the owner.

*Smalley* stated that the function of notice under the 1893 proviso[16] was to protect a subcontractor against a failure of the contractor with whom he dealt to list him in the sworn statement furnished the owner. A person dealing directly with the owner would have no need to protect himself against such an omission, and therefore would have no occasion to avail himself of the opportunity to serve notice pursuant to the proviso.[17]

---

[16] See fn 6, *supra.*

[17] "It is true that, for his own protection, the subcontractor, if he wishes to prevent a payment which will be valid as *against him* [emphasis in original], must see to it that the sworn statement of the original contractor (if the owner exacts one) embodies his claim, or must himself serve the notice provided by section 1." *Smalley v Ashland Brown-Stone Co,* 114 Mich 104, 108; 72 NW 29 (1897).

"Section 1, of the Lien Law provides for a notice to be served upon the owner, part owner, or lessee of the premises by one furnishing labor or materials in the building, erecting and ornamenting of a structure, or the furnishing of such labor or material. This notice, however, is not a prerequisite to the filing of the lien nor does the laborer or material man gain any advantage by it, except in cases where the owner, part owner, or lessee has paid the original contractor under the sworn statement required by section 4, of the Law, and which statement turns out to be either incorrect or false. However, in order to avoid any such contingency it would be better practice for the laborer or material man who is about to furnish labor or material, or is furnishing the same on a building, to give the owner notice of such fact, which notice may be in the following form: * * * ." Wilkinson, Mechanics' Liens on Real Property in Michigan (1906), § 43, pp 35–36.

"The prerequisites to a valid lien may be stated as follows:

* * *

"(b) A notice to the owner within thirty days after furnishing the first material or labor is provided for under section 1 of the statute, and will furnish protection to the subcontractor, materialman or laborer as against an erroneous statement to the owner by the contractor under section 4, though such notice is for the protection of the subcontractor, laborer or materialman and is not a prerequisite to a valid lien of such subcontractor, etc., even if the owner pays the contractor without first requiring the sworn statement required by section 4; nor will it be needed in the practical operations under the law if the contractor makes truthful statements to the owner." Wykes, The Michigan Law of Mechanics' Liens (1918), § 39, pp 56–57.

## III

The direct dealing exception is not "judicially created".[18] It is, rather, inherent in the language of the statute itself.[19] From its inception the proviso has applied only to a claimant furnishing labor or material "to [for] any contractor or subcontractor". A claimant dealing directly with the owner does not furnish labor or material to or for a contractor.

Since the proviso, as originally adopted, only required claimants to inform the owner that they were furnishing materials or performing labor and a description of the premises, it would have been pointless to require a claimant dealing directly with the owner to inform him that the claimant is furnishing materials or labor to him or to describe the premises.

The 1929 amendments do indeed add two additional requirements:

—notice to the owner of the materialman's or laborer's intention to claim a lien (see [ii] *supra*),[20] and

---

[18] *Burton Drywall, Inc v Kaufman, supra,* p 88.

[19] It is contended that the explicit language of § 6 (MCL 570.6; MSA 26.286), that the statement or account required to be recorded by § 5 (MCL 570.5; MSA 26.285) need not be served on the owner by "those persons contracting or dealing directly with the owner, part owner or lessee of such premises", implies that there is no such exception to § 1 (MCL 570.1; MSA 26.281).

The § 5 requirement that a statement or account be recorded within 90 days after the last of the materials or labor has been furnished or performed applies to all persons who desire to claim a lien. But for the explicit language, § 6 *by its terms* would apply to those dealing directly with the owner.

A direct dealing exception is not inherent in § 6, as it is in § 1, and hence the need for explicit language in § 6 and its absence in § 1.

The explicit language of § 6 is derived from 1893 PA 199, § 6; 1897 CL 10715.

[20] While it may be desirable that the owner know whether one dealing directly with him intends to claim a lien, there is a reason for a distinction based on whether the mechanic's lien secures payment of an obligation which the owner incurred or whether the right of

—notice that he has a right to demand a sworn statement "from such contractor or subcontractor" before paying any moneys (see [iii] *supra)*.[21] Nevertheless, the proviso by its terms still applies only to a person furnishing labor or material "to [for] a contractor or subcontractor".

A person dealing directly with an owner is not, therefore, required to provide either the 1893 notice of furnishing materials or labor or the 1929 notices of intention to claim a lien and of the owner's right to demand a sworn statement from the contractor.

Since the proviso does not apply to a person dealing directly with the owner, such a person is not required to serve "a notice as in this section provided". Hence, that language, relied on in *Webster* and in *Burton Drywall,* does not support the result reached by the Court of Appeals.

The *Mielis* construction was anticipated in treatises, apparently reflecting the understanding of the profession, written after the 1929 amendments were adopted and before that case was decided.[22]

The rationale of the direct dealing exception is stated in *Wallich:*

---

action against the owner arises under the mechanic's lien law. Where the owner deals directly with the contractor he need not be dependent on any other person for the administration of the contract.

[21] Requiring that a person intending to claim a lien inform the owner of his right to demand a sworn statement from the contractor is readily understandable where the claimant dealt with the contractor and therefore may not be known to the owner. Where, however, there is no intervening contractor, the owner would have no way of exercising the right it is contended he must be informed of. It is unlikely that the Legislature would impose this requirement on all lien claimants for the general edification of owners; where there is in fact an intervening contractor the information must be provided and the owner will therefore necessarily be so informed.

[22] "The Register of Deeds will accept liens without the proof of service attached from general contractors, architects and materialmen, where the lien states that the work was performed or the material was furnished in pursuance of a contract with the owner, since no notice at all, at any time is necessary where the lienor contracts direct with the owner, and this also applies to service of a

copy of the lien. That is, it is not necessary to serve either the fifteen-day notice or the copy of lien on the owner if the person claiming the lien was engaged by the owner, since it is obvious that if the owner hired a person, he would know about it without the service of a notice, but where a person is hired by a contractor or subcontractor, it is an altogether different matter, since the owner has no knowledge of the persons engaged by the general contractor. Hence the fifteen-day notice requirement." Smith, New Michigan Mechanics' Lien Law and How To Use It (1929), p 9.

"The prerequisites to a valid lien may be stated as follows: * * * (b) A notice to the owner, where dealings are not directly with him, within fifteen days after furnishing the first material or labor is provided for under section 1 of the statute. A notice, solely for labor, is timely if given before the contractor or subcontractor furnishes sworn statement under section 4 of the act. An additional prerequisite to claim of lien is now provided by Act 264 of 1929, C.L. 1929 § 13101, as follows:

\* \* \*

"New Requirements of 1929 Amendment to Section 1, Applicable to Furnishings to Contractors and Subcontractors.—All furnishers of materials and performers of labor, including subcontractors, dealing with a contractor or subcontractor, and not with the owner directly, are now required to serve on the owner, etc., personally or by registered mail, a written notice of the furnishing, and its nature, calling attention to the owners' right to demand a sworn statement from the contractor or subcontractor before any payment can be required on the contract, and his right to retain funds to pay subcontractors, materialmen and laborers, and giving notice of the intention to claim a lien." Wykes, The Michigan Laws of Mechanics' Liens (2d ed, 1931), §§ 39, 39(a), pp 77–78, 86–87.

A more recent comment, in response to *Burton Drywall,* states:

"The court's reasoning is clearly erroneous. First, the so-called 'judicial exception' to the requirement that a subcontractor had to serve a notice of intent to claim a lien upon the owner is not a judicial exception at all but, clearly and unambiguously, a statutory one. The relevant [portion] of the Act provides:

" 'that any person, firm or corporation furnishing materials or performing labor of any kind * * * shall within 90 days after the *furnishing* of the first of such materials or *performing* the first of such labor * * * *for any contractor or subcontractor,* serve on the owner * * * a written notice.'

"The only reasonable interpretation of this statutory language is that while a claimant who furnishes material or performs labor to a contractor or subcontractor must serve notice of intent, one who furnishes or supplies to an *owner* does not have to comply with the requirement of sending to the owner a notice of intention to claim a lien.

"The court based its statement that the Michigan supreme court's decision is *Mielis* was erroneous on the dubious and highly speculative proposition that the supreme court was unaware of a 1929 amendment to the mechanic's lien statute." Snider, *Commercial*

"The reason for the notice requirement and the distinction between one who deals directly with the owner and a subcontractor, materialman, or laborer who does not, is that in the first situation the owner knows there is a claim against him, but in the second case he may be unaware of a claim without such notice." *Wallich Lumber Co v Golds, supra,* pp 328–329.

## IV

After *Burton Drywall* was decided the amount owing to the lien claimant in that case was adjudicated in a separate action and tendered to it. After leave to appeal was granted we denied a motion to dismiss the appeal. The motion was renewed and now is again denied.

The decision of the Court of Appeals created uncertainty concerning the law. The matter is of sufficient ongoing importance both to the lien claimant in that case and to the jurisprudence to warrant resolution at this time. There is the requisite adversariness that provides some assurance that the issues are properly presented.[23]

Our disposition makes it unnecessary to consider the other issues considered in the opinion of the Court of Appeals in *Burton Drywall.*

*Burton Drywall* is reversed and remanded to the circuit court for further proceedings consistent with this opinion.

We respond in the negative to the certified

*Transactions* (§ V, Mechanics' Liens), 23 Wayne L Rev 423, 438 (1977) (emphasis in original).

See also Ruffus, *Burton Drywall, Inc v Kaufman: Pre-Lien Notice Requirements: An Exception?,* 1977 Detroit Col of L Rev 725.

[23] See *Wattles ex rel Johnson v Upjohn,* 211 Mich 514; 179 NW 335 (1920); *Lafayette Dramatic Productions, Inc v Ferentz,* 305 Mich 193; 9 NW2d 57; 145 ALR 1158 (1943); *Milford v People's Community Hospital Authority,* 380 Mich 49; 155 NW2d 835 (1968).

question stated in the introduction to this opinion; there is a direct dealing exception.

KAVANAGH, C.J., and WILLIAMS, COLEMAN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.