STORIE v SOUTHFIELD LEASING, INC

Docket No. 77-3955. Submitted February 13, 1979, at Detroit.—Decided June 6, 1979. Leave to appeal applied for.

Charles E. Storie was a passenger in a small-engine airplane piloted by Milton Lebow, president of Lebow Associates, Inc., of Troy, Michigan. The plane crashed near Akron, Ohio, killing both Storie and Lebow. Mr. Storie was a sales manager for Lebow Associates and a resident of Oakland County. The trip was to service business accounts in the Cleveland-Akron area. The aircraft was owned and registered by Southfield Leasing, Inc., and was being used by Lebow Associates under a lease agreement. Jareta D. Storie, administratrix of the estate of Charles E. Storie, brought a wrongful death action against Southfield Leasing. Southfield Leasing filed a third-party complaint against Lebow Associates pursuant to an indemnity provision in the aircraft lease. Plaintiff stipulated that the only claim against defendant Southfield Leasing was under the Michigan aircraft ownership liability statute. Southfield Leasing moved for summary judgment alleging that Federal legislation preempted the area of a lessor's liability for airplane collisions, thus rendering the Michigan statute inapplicable. Lebow Associates, third-party defendant, contended that sum-

REFERENCES FOR POINTS IN HEADNOTES

[1] 8 Am Jur 2d, Aviation §§ 70, 73 et seq.
[2, 11] 8 Am Jur 2d, Aviation § 65.
  What is place of Tort causing personal injury or resultant damage or death, for purpose of principle of conflict of laws that law of place of tort governs. 77 ALR2d 1266.
[3] 73 Am Jur 2d, Statutes § 46.
[4] 16 Am Jur 2d, Conflict of Laws § 11.
[5] 8 Am Jur 2d, Aviation § 64 et seq.
[6, 7] 16 Am Jur 2d, Conflict of Laws § 8.
[8] 8 Am Jur 2d, Aviation §§ 64, 65.
[9] 8 Am Jur 2d, Aviation § 72.
[10] 8 Am Jur 2d, Aviation § 70 et seq.
  Statute imposing strict liability on aircraft owner as affecting liability under Federal Tort Claims Act. 74 ALR2d 867.
[12] 16 Am Jur 2d, Conflict of Laws §§ 6, 9.
[13] 20 Am Jur 2d, Courts § 15.

mary judgment was proper according to the doctrine of *lex loci delicti* which required application of Ohio law. Oakland Circuit Court, William J. Beer, J., granted defendant's motion on the court's interpretation of the *lex loci delicti* rule. Plaintiff appeals and argues that the doctrine of *lex loci delicti* has no application. Southfield Leasing has cross-appealed contending that the trial court erred in refusing to grant the motion for summary judgment on the ground of Federal preemption. Lebow Associates is not a party to this appeal. *Held:*

1. The Michigan Supreme Court has adopted a rule which holds that foreign law will not be recognized if contrary to the public policy of the forum. Where the public policy of Michigan, to encourage increased supervision over the maintenance of aircraft, is embodied in a state statute and that public policy would be thwarted if a case were tried in Ohio which has no similar statutory provision or common-law doctrine, the *lex loci delicti* rule should not be applied. The wrongful death action started in Michigan should be tried in Michigan.

2. The Federal aircraft security statute does not prevent states from imposing liability upon owners of airplanes where an injury occurred inside an aircraft and not on the surface of the earth. The Michigan statute, as written, imposes liability upon aircraft owners both for injuries incurred on the ground and those suffered inside the airplane. Liability under the state statute for the former must yield and is unenforceable because of a conflict between state and Federal law; however, liability may be imposed under the state statute for the latter type of injury, which may be severed from the statute without doing injustice to the legislative intent.

Reversed and remanded.

D. C. RILEY, J., dissented. She would hold that aircraft litigation should not be excepted from the *lex loci delicti* doctrine. The Supreme Court has held that a Michigan statute which permits a cause of action which is nonexistent in a foreign jurisdiction is insufficient to raise the issue of contravention of the foreign state's public policy. This decision is well advised, because to hold otherwise would mean, in large part, the eventual engulfment of the *lex loci delicti* doctrine by the public policy exception, for whenever foreign law would prohibit a cause of action sanctioned by our state, public policy would automatically dictate application of Michigan law, and thus unduly frustrate the intent of the *lex loci delicti* principle as a problem solving choice of law rule.

Opinion of the Court

1. Aviation — Torts — Maintenance of Aircraft — Negligence
      — Operation of Aircraft — Ordinary Care — Common Law
      — Statutes.

   The owner or operator or the person or organization responsible
   for the maintenance or use of an aircraft shall be liable for any
   injury occasioned by the negligent operation of the aircraft,
   whether the negligence consists of a violation of the provisions
   of the statutes of the state, or in failure to observe ordinary
   care in the operation, as the rules of the common law require
   (MCL 259.180a[1]; MSA 10.280[1]).

2. Torts — Conflict of Law — Lex Loci Delicti — Public Policy.
   The doctrine of *lex loci delicti* has been traditionally followed by
   Michigan courts in choice of law cases; the rule states that, in
   tort actions, the law governing the litigation is the law of the
   state where the tort occurred; however, there is a seldom
   applied exception which states that foreign law will not be
   recognized if contrary to the public policy of the forum.

3. Statutes — Public Policy — Legislature — Court Decisions —
   Constitutional Law.

   The public policy of a state is fixed by its constitution, its
   statutory law, and the decisions of its courts; and when the
   Legislature enacts a law within the limits of the constitution,
   the enactment insofar as it bears upon the matter of public
   policy is conclusive.

4. Torts — Conflict of Law — Lex Loci Delicti — Public Policy
      — Aviation — Lessees and Lessors — Wrongful Death.
   The public policy of Michigan takes precedence over the doctrine
   of *lex loci delicti* in resolving a choice of law question where all
   the principals involved in an Ohio airplane crash were Michi-
   gan residents, the lessor and lessee of the aircraft are Michigan
   residents and a decedent, whose death prompted a wrongful
   death action in Michigan, was also a resident of this state.

5. Aviation — Torts — Owner Liability Statute — Safety of
   Airplanes — Negligence — Common Law Rules — Conflict
   of Law — Statutes.

   The purpose of the statute imposing owner liability for the
   negligent operation of aircraft is to increase the safety of
   airplanes flown within the state; to effectuate this intention
   and to encourage increased supervision over the maintenance
   of aircraft, the Legislature chose to deviate from the common-
   law rule which imposes no such liability; therefore, to permit
   owners of airplanes to escape liability on the basis of the mere

fortuity that injury did not occur within the boundaries of this state would undermine the purpose and intended effect of the statute (MCL 259.1, 259.180a[1]; MSA 10.101, 10.280[1]).

6. STATUTES — STATES — FEDERAL PREEMPTION — EXPRESS — IMPLIED.

Federal preemption of state statutes may occur where the intent to preempt is expressly manifested by the statutory language of the Federal enactment; the intent to preempt may also be implied where the Federal regulatory scheme is so pervasive, the Federal interest so dominant, or the need for uniformity so great that state regulation of the subject matter would create an obstacle to the accomplishment of the objective of the Federal government.

7. STATUTES — STATES — CONFLICTS WITH FEDERAL LAW.

A state law must yield when it is in direct conflict with Federal law.

8. AVIATION — STATES — STATUTES — FEDERAL PREEMPTION — TORTS — OWNER LIABILITY STATUTE — NEGLIGENCE.

Generally, the regulatory scheme relating to aviation may be sufficiently pervasive as to require preemption of state statutes in many areas of aviation law; however, this is not true in the area of owner liability for the negligent use of airplanes where the area of tort liability has, for the most part, been left to the states.

9. AVIATION — TORTS — FEDERAL SECURITY STATUTE — APPLICABILITY — STATUTES.

The Federal aircraft security statute shields the lessor of an airplane from tort liability for any injury or loss suffered on the surface of the earth; however, the statute is inapplicable where an injury occurred inside an aircraft and not on the surface of the earth (49 USC 1404; MCL 259.180a[1]; MSA 10.280[1]).

10. AVIATION — TORTS — OWNER LIABILITY STATUTE — FEDERAL PREEMPTION — STATE STATUTES — CONSTRUCTION — SEVERABILITY.

The state statute which imposes owner liability for the negligent operation of aircraft is not entirely preempted by Federal legislation; as written, the statute imposes liability upon aircraft owners both for injuries incurred on the ground and those suffered inside an airplane, and, although liability for the former must yield and is unenforceable because of a conflict between state and Federal law, liability may be imposed under

the state statute for the latter type of injury which may be severed from the statute without doing injustice to the legislative intent (49 USC 1404; MCL 259.180a[1]; MSA 10.280[1]).

Dissent by Riley, J.

11. Aviation — Torts — Conflict of Law — Lex Loci Delicti — Forum Shopping — Automobile Mishaps.

   *Aircraft litigation should not be excepted from the* lex loci delicti *doctrine; the underlying policy of the doctrine and its justification is to provide for certainty and eliminate forum shopping which is equally relevant not only to automobile and airplane mishaps, but other tort situations as well.*

12. Torts — Statutes — Conflict of Law — Lex Loci Delicti — Jurisdiction — Public Policy.

   *The fact that a Michigan statute permits a cause of action which is not available in a foreign jurisdiction has been held insufficient by the Supreme Court to raise the issue of contravention of the forum state's public policy.*

13. Courts — Court of Appeals — Supreme Court — Supreme Court Principles — Duty to Apply.

   *The Court of Appeals is duty bound to apply principles promulgated by the Supreme Court unless convinced that it would rule differently today.*

*Richard F. Schaden, P.C.* (by *Victoria C. Heldman),* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pederson* (by *John P. Jacobs),* for defendant.

Before: Cynar, P.J., and D. E. Holbrook, Jr. and D. C. Riley, JJ.

Cynar, P.J. In pertinent part, the undisputed facts in this case are as follows:

On January 17, 1974, plaintiff's decedent, Charles E. Storie, was a passenger in a small-engine airplane, piloted by Milton Lebow, when that plane crashed near Akron, Ohio, killing both occupants.

Lebow was the president of Lebow Associates, Inc., a Michigan corporation with its principal place of business in Troy. The purpose of the flight was to service accounts for Lebow Associates in the Cleveland-Akron area. Decedent was employed by the company as a sales manager at the time of his death and resided in Oakland County, Michigan.

The aircraft in question was owned and registered at the time of the crash by defendant Southfield Leasing, Inc. (hereinafter referred to as defendant), which had leased the plane to Lebow Associates for Lebow's use pursuant to a lease agreement on May 26, 1969.

On September 6, 1974, plaintiff filed a wrongful death action in Wayne County against defendant, which in turn instituted a third-party complaint against Lebow Associates pursuant to an indemnity provision of the aircraft lease. Following a transfer of venue to Oakland County, plaintiff stipulated that its only claim against defendant was under the Michigan aircraft ownership liability statute. MCL 259.180a(1); MSA 10.280(1).

Thereafter, defendant moved for summary judgment alleging that Federal legislation, specifically 49 USC 1404, preempted the area of a lessor's liability for airplane collisions, thus rendering the Michigan statute inapplicable.

Third-party defendant, Lebow Associates, Inc., filed a brief in support of defendant's motion urging that summary judgment was also proper for a second reason, that the doctrine of *lex loci delicti* required the application of Ohio law, under which the present action could not be maintained.

On September 15, 1977, the lower court granted defendant's motion for summary judgment on this latter ground.

Plaintiff now appeals as of right and argues that the doctrine of *lex loci delicti* had no application in the case at bar. Defendant has cross-appealed and argues that the lower court erred in refusing to grant the motion for summary judgment on the ground of Federal preemption.

Third-party defendant, Lebow Associates, is not a party to this appeal.

MCL 259.180a(1); MSA 10.280(1) provides as follows:

"The owner or operator or the person or organization responsible for the maintenance or use of an aircraft shall be liable for any injury occasioned by the negligent operation of the aircraft, whether the negligence consists of a violation of the provisions of the statutes of the state, or in the failure to observe ordinary care in the operation, as the rules of the common law require."

The parties agree that Ohio lacks a similar statute, and, as it is not otherwise alleged by plaintiff, apparently further agree that Ohio common law would disallow such an action.

In choice of law cases, Michigan has traditionally followed the doctrine of *lex loci delicti,* which states that, in tort actions, the law governing the litigation is the law of the state where the tort occurred. *Kaiser v North,* 292 Mich 49; 289 NW 325 (1939). However, in *Sweeney v Sweeney,* 402 Mich 234, 240; 262 NW2d 625 (1978), the Court gave new life to a seldom applied exception to the rule of *lex loci delicti,* stating that "the foreign law will not be recognized if contrary to the public policy of the forum". Therefore, the choice of law question posed by this case turns on whether applying Ohio law would violate the public policy of the State of Michigan.

We believe this issue is controlled by the Court's

opinion in *Branyan v Alpena Flying Service, Inc,*
65 Mich App 1; 236 NW2d 739 (1975). In that case,
the Court applied Michigan law to an action aris-
ing out of an airplane crash which occurred in
Virginia. After noting that all the principals in-
volved were residents of this state, the Court
concluded that a Michigan statute providing for
full recovery of damages should be applied, rather
than a limitation on the amount of damages con-
tained in a Virginia statute. In concluding that the
Michigan statute embodied a public policy of the
state, which would be violated by applying Vir-
ginia law, the Court stated:

"The public policy of a state is fixed by its constitu-
tion, its statutory law, and the decisions of its courts;
and when the Legislature enacts a law within the limits
of the constitution, the enactment insofar as it bears
upon the matter of public policy is conclusive."[1] *Bra-
nyan, supra,* at 8.

We conclude that *Branyan, supra,* should be
followed in the present case. As in *Branyan,* all
the principals involved were Michigan residents.
Both the lessor and lessee of the plane are Michi-
gan corporations and the decedent was also a
resident of this state. In this case, unlike *Branyan,
supra,* the choice of law question does not merely
determine the maximum recoverable amount. It is
determinative of whether plaintiff can recover at
all. If the statute considered in *Branyan, supra,*

[1] Although the language in *Branyan, supra,* states that the enact-
ment of a statute is "conclusive" as to the public policy of the state,
we do not go quite that far in our analysis. We do believe that the
enactment of such a statute is a positive indication of the public
policy of the state. For purposes of the public policy exception to the
*lex loci delicti* rule, however, the Legislature's indication of public
policy must also be balanced against the public policy opposed to
forum shopping by potential litigants. Such a balancing requires
consideration of all available circumstances.

which bears only upon the extent of recovery involves a public policy capable of overcoming the general rule of *lex loci delicti,* then the statute involved in the present case certainly expresses a similar policy.

Our conclusion to apply Michigan law is further buttressed by examining the apparent legislative purpose behind MCL 259.180a(1); MSA 10.280(1). The statute appears to be directed toward increasing the safety of aircraft flown within the state. This is evidenced by language in the same act, stating:

"It is hereby declared that the purpose of this act is to further the public interest and aeronautical progress by providing for the protection and promotion of safety in aeronautics * * *." MCL 259.1; MSA 10.101.

To effectuate this purpose the Legislature chose to deviate from the common-law rule, see, Note: Lohr, *Recent Decisions,* 57 Mich L Rev 111 (1958), and impose liability upon the owner of an aircraft. No doubt, this was intended to encourage increased supervision over the maintenance of aircraft. We believe this purpose would be undermined by permitting owners of airplanes to escape liability on the basis of the mere fortuity that the injury did not occur within the boundaries of this state.

Having determined that the *lex loci delicti* rule should not be applied in this case, it is necessary to consider the argument raised in defendant's cross-appeal. Defendant contends that MCL 259.180a(1); MSA 10.280(1) deals with an area of law that has been preempted by Federal legislation. Defendant also points to 49 USC 1404 which provides:

"No person having a security interest in, or security title to, any civil aircraft, aircraft engine, or propeller under a contract of conditional sale, equipment trust, chattel or corporate mortgage, or other instrument of similar nature, and no lessor of any such aircraft, aircraft engine, or propeller under a bona fide lease of thirty days or more, shall be liable by reason of such interest or title, or by reason of his interest as lessor or owner of the aircraft, aircraft engine, or propeller so leased, for any injury to or death of persons, or damage to or loss of property, on the surface of the earth (whether on land or water) caused by such aircraft, aircraft engine, or propeller, or by the ascent, descent, or flight of such aircraft, aircraft engine, or propeller or by the dropping or falling of an object therefrom, unless such aircraft, aircraft engine, or propeller is in the actual possession or control of such person at the time of such injury, death, damage, or loss."

Defendant claims that the provisions of the Federal statute are in direct conflict with the language of the Michigan statute and that the latter is therefore preempted.

In ruling upon defendant's motion for summary judgment, the trial judge concluded that no preemption has occurred. We agree with the trial judge's conclusion that MCL 259.180a(1); MSA 10.280(1), as applied in this case, is not preempted by Federal legislation.

Federal preemption may occur in a number of contexts. The intent to preempt may be expressly manifested by the statutory language. *Bethlehem Steel Co v New York State Labor Relations Board,* 330 US 767, 771-772; 67 S Ct 1026; 91 L Ed 1234 (1947). The intent to preempt has also been implied where the Federal regulatory scheme is so pervasive, the Federal interest so dominant, or the need for uniformity so great that state regulation of the subject matter would create an obstacle to the accomplishment of the objective of the Federal

government. *Rice v Santa Fe Elevator Corp,* 331 US 218, 230; 67 S Ct 1146; 91 L Ed 1447 (1947), *Marshall v Consumers Power Co,* 65 Mich App 237, 245; 237 NW2d 266 (1975). State law must also yield when in direct conflict with Federal law. *Sperry v State of Florida ex rel Florida Bar,* 373 US 379, 384; 83 S Ct 1322; 10 L Ed 2d 428 (1963).

In the present case the Federal statute includes no express intention to preempt the field of owner liability for the negligent use of airplanes. To the contrary 49 USC 1506 provides that:

"Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

This provision has been interpreted as applying to state remedies as well as remedies arising under Federal law. *Porter v Southeastern Aviation, Inc,* 191 F Supp 42, 43 (MD Tenn, 1961).

Nor is an intention to preempt properly implied. There is no pressing need for uniformity in the area; nor is the Federal interest in this topic so dominant as to preclude state regulation. Although the regulatory scheme relating to aviation generally may be sufficiently pervasive as to require preemption of state statutes in other areas of aviation law, see *Burbank v Lockheed Air Terminal,* 411 US 624; 93 S Ct 1854; 36 L Ed 2d 547 (1973), this is not true in the area of owner liability for the negligent use of airplanes. Rather, the area of tort liability has generally been left to the states. *Rogers v Ray Gardner Flying Service, Inc,* 435 F2d 1389, 1394 (CA 5, 1970).

We do conclude that MCL 259.180a(1); MSA 10.280(1) does, *in part,* conflict with the provisions of 49 USC 1404. The latter statute shields a lessor

of an airplane from tort liability for any injury or loss suffered "on the surface of the earth". See *Rogers v Ray Gardner Flying Service, Inc, supra,* and *McCord v Dixie Aviation Corp,* 450 F2d 1129, 1130 (CA 10, 1971). To the extent that MCL 259.180a(1); MSA 10.280(1) would impose liability for such an injury or loss upon the lessor of the airplane, the statute directly conflicts with Federal law and is preempted by it.

A close reading of 49 USC 1404 leads us to conclude, however, that the Federal statute is inapplicable to the situation presented under the circumstances of this case. In the present case the injury occurred inside the aircraft and not upon the surface of the earth. We do not read 49 USC 1404 as preventing the states from imposing liability upon the owners of airplanes in these circumstances.

Therefore, we conclude that MCL 259.180a(1); MSA 10.280(1) is not entirely preempted by the Federal legislation. As written, the Michigan statute imposes liability upon aircraft owners both for injuries incurred on the ground and those suffered inside the aircraft. Although liability for the former species of injury must yield to the Federal mandate, the liability imposed by the statute for the latter type of injury may be severed from the statute without doing injustice to the legislative intent. See *Braun v McPherson,* 277 Mich 396, 403; 269 NW 211 (1936), *People v De Silva,* 32 Mich App 707, 714; 189 NW2d 362 (1971).

Reversed and remanded. No costs, interpretation of statutes being involved.

D. E. HOLBROOK, JR., J., concurred.

D. C. RILEY, J. *(dissenting).* I am not persuaded that *Branyan v Alpena Flying Service, Inc,* 65

Mich App 1; 236 NW2d 739 (1975) is dispositive in the case at bar. In *Abendschein v Farrell,* 382 Mich 510; 170 NW2d 137 (1969), the Supreme Court addressed and rejected the modern trend toward a "dominant contacts"[1] inquiry into conflicts analysis, and instead reaffirmed the doctrine of *lex loci delicti. Branyan,* however, declined to follow *Abendschein* for the following reason:

"Defendant argues that as an intermediate appellate court, we may neither adopt a conflict-of-laws standard different from that traditionally followed in Michigan nor entertain an invitation to overrule Supreme Court precedent. However, we need not decide whether *Abendschein* should be overruled in deciding the question before us since the rule enunciated in *Abendschein* does not apply to this case. The *Abendschein* Court expressly excluded the *lex loci delicti* rule from cases involving airplane accidents when it stated at 519; 170 NW2d 140:

" 'Bearing in constant mind that *this case and its issue deals only with actions at law for damages arising out of motorcar (not airplane) accidents'.* (Emphasis added.)

"Having explained why we cannot, on the authority of *Abendschein v Farrell, supra,* declare that the plaintiffs are limited in the amount of damages they may recover, we now turn to a disposition of this case which we think both valid and within our authority." 65 Mich App at 5-6.

For two reasons, I would not hold *Branyan* applicable in the present case. First, the above quoted passage from *Abendschein* was mere dicta and was further directly responsive to *Babcock v Jackson,* 12 NY2d 473; 240 NYS2d 743; 191 NE2d

---

[1] The "dominant contacts" approach to choice of law questions requires an assessment of the equities of the parties, the contacts involved between the forums, and the competing state policies in an effort to determine what law should apply to the case. *Sexton v Ryder Truck Rental, Inc,* 84 Mich App 69, 70, fn 2; 269 NW2d 308 (1978).

279; 95 ALR2d 1 (1963), itself an automobile case and an early proponent of the dominant contacts principle. Second, I am unable to fathom a sufficiently debatable reason why aircraft litigation should be excepted from the *lex loci delicti* doctrine. Indeed, its underlying policy and justification—to provide for certainty and eliminate forum shopping—is equally relevant not only to automobile and airplane mishaps, but other tort situations as well.

Plaintiff argues that even if *Branyan* is not directly controlling, the enactment of MCL 259.180a(1); MSA 10.280(1) itself embodies a public policy determination pertaining to the vicarious liability of aircraft owners resulting from collisions that would make defendant here liable. However, the mere fact that a Michigan statute permits a cause of action nonexistent in a foreign jurisdiction has been held insufficient by the Supreme Court to raise the issue of contravention of the forum state's public policy:

"The fact Michigan statutory regulations of the rights of a motor vehicle guest passenger may differ from Ontario statutory provisions, or even the provisions of the common law governing like rights, is not a reason for holding the statute of the foreign jurisdiction contravenes public policy here." *Kaiser v North,* 292 Mich 49, 57; 289 NW 325 (1939).

See also *Sexton v Ryder Truck Rental, Inc,* 84 Mich App 69, 73; 269 NW2d 308 (1978). In my opinion this judgment is well advised; to hold otherwise would mean, in large part, the eventual engulfment by the public policy exception of the *lex loci delicti* doctrine itself, for whenever foreign law would prohibit a cause of action sanctioned by our state, "public policy" would automatically dic-

tate application of Michigan law, and thus unduly
frustrate the intent of the *lex loci delicti* principle,
*supra,* as a problem solving choice of law rule.

Whatever merits attach to an alternative in-
quiry into choice of law jurisprudence, I believe we
are nevertheless duty bound to apply those princi-
ples promulgated by the Supreme Court, unless we
are convinced it would rule differently today.
*Turner v Ford Motor Co,* 81 Mich App 521, 527-
528; 265 NW2d 400 (1978), *Burton Drywall, Inc v
Kaufman,* 69 Mich App 85, 90; 244 NW2d 367
(1976), *rev'd on other grounds,* 402 Mich 366; 263
NW2d 249 (1978). Because I am unable to make
such a determination, I would affirm the lower
court's grant of summary judgment.